# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEKETHA WONZER and KEVIN DOZIER,<br><br>Plaintiffs,<br><br>-against-<br><br>DANIEL HERNANDEZ a/k/a Tekashi 6ix 9ine,<br><br>Defendant. | Case No. 1:20-cv-10836-JPC<br><br>Judge John P. Cronan<br>Magistrate Judge Jennifer E Willis |

## DEFENDANT DANIEL HERNANDEZ'S OPPOSING
## FINDINGS OF FACTS AND CONCLUSIONS OF LAW

MELONI & McCAFFREY APC
Robert S. Meloni, Esq.
Thomas P. McCaffrey, Esq.
3 Columbus Circle, 15th Floor
New York, New York 10019

*Attorneys for Defendant Daniel Hernandez a/k/a Tekashi 6ix 9ine*

## <u>TABLE OF CONTENTS</u>

I   The Applicable Law ...................................................................................................... 1

    A.    The Standards for Damages Inquest on Default ........................................................ 1

    B.    Damages Must Be Established with Reasonable Certainty ..................................... 2

    C.    Plaintiffs Must Prove Causation ................................................................................ 3

    D.    Damages for Pre-Existing Conditions Must Be Specifically Pled and Proved......4

II.  This Can Only Be Garden Variety Emotional Distress .........................................................9

    A.    Compensatory Damages............................................................................................ ..9

        (a) Fact – Plaintiffs Have Not Proven Their Purported Medical Conditions..........13

    B.    Dozier Cannot Recover Twice ........................................................................... 16

    C.    Punitive Damages………………………………………………………………...16

    1.    Plaintiffs Must Prove Their Right To Punitive Damages .................................. 16

        (a) Fact – Defendant Had No Evil Motive……………………………………18

    2.    Punitive Dames Must Not Be A Windfall For Plaintiffs ..................................19

    3.    Punitive Damages Must Not Bankrupt The Defendant…………………………20

    4.    There Is Nothing Similar In The Cases Plaintiffs Have Cited……………………22

CONCLUSION ...............................................................................................................25

## **TABLE OF AUTHORITIES**

**Cases**                                                                                              **Pages**

*Aldrich v. Thomson McKinnon Sec.,*
    756 F.2d 243 (2d Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19, 20

*Ali v. Kipp,*
    891 F.3d 59 (2d Cir. 2018)………………………………………………………….3

*Antoine v. Brooklyn Maids 26, Inc.,*
    489 F. Supp. 3d 68 (E.D.N.Y. 2020) ................................................................ 2, 12, 15

*Baker v. Drake,*
    53 N.Y. 211 (1873)...................................................................................... 4

*Bambu Sales, Inc. v. Ozak Trading, Inc.,.,*
    902 F.2d 194 (2d Cir. 1990)........................................................................ 1

*Belizaire v. Rav Investigative & Sec. Servs.,*
    61 F. Supp. 3d 336 (S.D.N.Y 2014) ........................................................... 3

*Bert v Port Auth. of N.Y. & N.J.,*
    166 A.D.2d 351, 561 N.Y.S. 2d 416 (1st Dep't 1990) ........................................... 1

*BMW of North America, Inc. v. Gore,*
    517 U.S. 559, 116 S. Ct. 1589,  134 L. Ed. 2d 809 (1996)...................................... 17-23

*Bolivar v. FIT Int'l Grp. Corp.,*
    No. 12-CV-0781, 2017 U.S. Dist. LEXIS 39887 (S.D.N.Y. Mar. 16, 2017),
    *adopted by* 2019 U.S. Dist. LEXIS 161718 (Sept. 20, 2019)................................. 1-3

*Braccia v. D'Blass Corp.,*
    2011 U.S. Dist. LEXIS 77215 (S.D.N.Y. June 13, 2011),
    *report and recommendation adopted,*
    2011 U.S. Dist. LEXIS 77386 (S.D.N.Y. July 18, 2011).)...................................... 2

*Brink's Inc. v. City of New York,*
    546 F. Supp. 403 (S.D.N.Y. 1982),
    *aff'd,*717 F.2d 700 (2d Cir. 1983)........................................................................ 17, 21

*Carey v. Piphus,*
    435 U.S. 247, 55 L. Ed. 2d 252, 98 S. Ct. 1042 (1978)…………………………….4

*Carrion v. Agfa Constr., Inc.,*
 720 F.3d 382 (2d Cir. 2013)...................................................................................... 17

*Carroll v. United States,*
 295 Fed. Appx. 382, 2008 U.S. App. LEXIS 2127 (2d Cir. 2008)......................6

*Caravantes v. 53rd St. Partners, LLC,*
 No. 09 Civ 7821, 2012 U.S. Dist. LEXIS 120182 (S.D.N.Y. Aug. 23, 2012). . . .15

*Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.,*
 824 F. Supp. 2d 573 (S.D.N.Y. 2011)...........................................................…..22

*Credit Lyonnais Sec. (USA), Inc. v. Alcantara,*
 83 F.3d 151 (2d Cir. 1999)................................................................................ 1, 16

*DeCurtis v. Upward Bound Int'l, Inc.,*
 No. 09 Civ. 5378, 2011 U.S. Dist. LEXIS 114001 (S.D.N.Y. Sept. 27, 2011) ........ 24

*De Sole v. Knoedler Gallery, LLC,*
 12 Civ. 2313, 2016 U.S. Dist. LEXIS 96196 (S.D.N.Y July 21, 2016) ................... 16

*Dor Yeshurim, Inc. v. A Torah Infertility Medium of Exch.,*
 No. CV 10-2837, 2011 U.S. Dist. LEXIS 153153 (E.D.N.Y. Aug. 10, 2011)
 *report and recommendation adopted,*
 2012 U.S. Dist. LEXIS 17655 (E.D.N.Y. Feb. 10, 2012) ...................................... 3

*Ferri v. Berkowitz,*
 561 F. App'x 64 (2d Cir. 2014).............................................................................. 1

*Fowler v. New York Transit Auth.,*
 No. 96 Civ 6796, 2001 U.S. Dist. LEXIS 762 (S.D.N.Y. Jan. 31, 2001 ................ 11

*Fustok v. ContiCommodity Servs., Inc.,*
 873 F.2d 38 (2d Cir. 1989)................................................................................... 2

*Garcia, v. Comprehensive Ctr.,*
 17-CV-8970, 2019 U.S. Dist. LEXIS 203447 (S.D.N.Y. Nov. 21, 2019),
 *R. & R. adopted*, 2020 U.S. Dist. LEXIS 50791 (S.D.N.Y. March 24, 2020).......12, 15, 23

*Greathouse v. JHS Sec. Inc., No. 11 Civ. 7845,*
 2015 U.S. Dist. LEXIS 154388 (S.D.N.Y. Nov. 13, 2015),
 *adopted by* 2016 U.S. Dist. LEXIS 115494 (S.D.N.Y. Aug. 29, 2016). . . . . . . . . 20, 22, 23

*Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp.,*
 973 F.2d 155 (2d Cir. 1992), *cert. denied,*
 506 U.S. 1080, 113 S. Ct. 1049, 122 L. Ed. 2d 357 (1993)..................................... 1

*Griffiths v. Francillon,*
No. CV 10-3101, 2012 U.S. Dist. LEXIS 54681 (E.D.N.Y. Jan. 30, 2012 ),
*report and recommendation adopted,*
2012 U.S. Dist. LEXIS 54683 (E.D.N.Y. Apr. 13, 2012) ..................................... 3

*Grunenthal v. Long Island R.R.,*
393 U.S. 156, 21 L. Ed. 2d 309, 89 S. Ct. 331 (1968) ........................................... 16

*Gutierrez v. Taxi Club Mgmt., Inc.,*
No. 17CIV532, 2018 U.S. Dist. LEXIS 106808 (E.D.N.Y. June 25, 2018),
*report and recommendation adopted,*
No. 17CV0532, 2018 U.S. Dist. LEXIS 118262 (E.D.N.Y. July 16, 2018). . . . . . 10, 12

*Hanley v. St. Charles Hosp. & Rehab. Ctr.,*
307 A.D.2d 274, 763 N.Y.S.2d 322, 324 (2d Dep't 2003)..................................... 4

*Hill v. Airborne Freight Corp.,*
212 F. Supp. 2d 59 (E.D.N.Y. 2002)...................................................................... 11

*Hounddog Prod., L.L.C. v. Empire Film Grp., Inc.,*
826 F. Supp. 2d 619 (S.D.N.Y. 2011) .................................................................... 2

*Johnson v. Grant,*
3 A.D.3d 720, 770 N.Y.S.2d 487 (3d Dep't 2004) ............................................. 5, 6

*Joseph v. HDMJ Rest., Inc.,*
970 F. Supp. 2d 131 (E.D.N.Y. Aug. 19, 2013)..................................................... 11

*Lanfranconi v. Tidewater Oil,*
376 F.2d 91, 97 (2d Cir.) cert. denied,
389 U.S. 951, 88 S. Ct. 334, 19 L. Ed. 2d 361 (1967) ........................................... 19

*Lee v. Edwards,*
101 F.3d 805 (2d Cir 1996)................................................................................. 17, 23

*Liberty Mut. Ins. Co. v. Luxury Transp. Mgmt. Inc.,*
No. CV 07-0608, 2009 U.S. Dist. LEXIS 124326 (E.D.N.Y. Mar. 19, 2009)
*report and recommendation adopted,*
2009 U.S. Dist. LEXIS 32253 (E.D.N.Y. Apr. 15, 2009) ....................................... 3

*Lewis Family Group Fund Lp v. Js Barkats Pllc,*
2021 U.S. Dist. LEXIS 62810 (S.D.N.Y. March 23, 2021) .................................... 16

*Manson v. Friedberg,*
08 CIV. 3890, 2010 U.S. Dist. LEXIS 145499 (S.D.N.Y. June 13, 2013).............. 10

*Manswell v. Heavenly Miracle Acad. Servs., Inc.,*
    No. 14 Civ. 7114, 2017 U.S. Dist. LEXIS 136366 (E.D.N.Y. Aug. 23, 2017) ........ 24

*May v. Sony Music Entertainment*, 389 F.Supp.3d 169 (S.D.N.Y. 2019) .......................... 13, n. 1

*McLaughlin v. Barron,*
    2018 U.S. Dist. LEXIS 12507 (S.D.N.Y. Jan. 24, 2018),
    *report and recommendation adopted,*
    2018 U.S. Dist. LEXIS 26948 (S.D.N.Y. Feb. 20, 2018)....................................... 2

*Medina v. Donaldson,*
    No. 10 Civ. 5922, 2014 U.S. Dist. LEXIS 33723(E.D.N.Y. Mar. 14, 2014) ........... 24

*Meyers v. Epstein,*
    282 F. Supp. 2d 151, 154  (S.D.N.Y 2003)............................................................. 4

*Mihileas v. State,*
    266 A.D.2d 866, 697 N.Y.S.2d 891 (4th Dep't 1999).............................................. 5

*Munson v. Diamond,*
    15-CV-00425, 2017 U.S. Dist. LEXIS 85143 (S.D.N.Y. June 1, 20017) ................ 19

*Najnin v. Dollar Mountain, Inc., ,*
    No. 14 Civ. 5758, 2015 U.S. Dist. LEXIS 141811 (S.D.N.Y. Sept. 25, 2015) ........ 10

*Offei v. Mahmoud Abdel-Salam Omar,*
    11 Civ. 428, 2012 U.S. Dist. LEXIS 80171 (S.D.N.Y. May 18, 2012) ................... 24

*Olsen v. Cty. of  Nassau, ,*
    615 F. Supp. 2d 35 (E.D.N.Y. 2009)..................................................................... 11

*Ortiz v. Mendolia,*
    116 A.D.2d 707. 497 N.Y.S. 2d 761 (2d Dep't 1986).............................................. 4

*Patrolmen's Benevolent Ass'n. of City of  New York v. City of New York,*
    310 F.3d 43 (2d Cir. 2002)..................................................................................... 9, 10

*Patterson v. Balsamico,*
    440 F.3d 104 (2d Cir. 2006).................................................................................. 20, 24

*Payne v. Jones,*
    711 F.3d 85 (2d Cir. 2012).................................................................................... 17, 22

*Phelan v. Local 305 of United Ass'n of Journeymen,*
    973 F.2d 1050 (2d Cir. 1992)................................................................................ 16

*Poulos v. City of New York,*
> 14-CV-03023, 2018 U.S. Dist. LEXIS 118364 (S.D.N.Y. July 13, 2018)............... 9

*Ravina v. Columbia University, ,*
> No. 16-CV-2137, 2019 U.S. Dist. LEXIS 56556 (S.D.N.Y. March 31, 2019) ....... 10

*RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.,*
> No. 12-CV-1369, 2013 U.S. Dist. LEXIS 55804 (S.D.N.Y. Apr. 18, 2013),
> *adopted by* 2013 U.S. Dist. LEXIS 120508, (Aug. 23, 2013) ................................. 2

*Rodgers v New York City Tr. Auth.,*
> 70 A.D.3d 917, 896 N.Y.S.2d 112 (2d Dep't 2010)................................................ 5

*Rosas v. Baiter Sales Co. Inc.,*
> No. 12-CV-6557, 2018 U.S. Dist. LEXIS 109332 (S.D.N.Y. June 29, 2018)......... 22

*Roth v. Hudson Transit Lines, Inc.,*
> 72 Misc. 2d 999, 340 N.Y.S.2d 224 (N.Y. Sup. Ct. 1972) ...................................... 4

*Ruscito v County of Suffolk,*
> 2016 N.Y. Misc. LEXIS 4981,
> 2016 NY Slip Op 32678(U) (Sup. Ct. Suffolk Co. May 19, 2016)......................... 5

*Santiago v. Crown Heights Ctr. for Nursing & Rehab.,*
> No. 15CV4381, 2017 U.S. Dist. LEXIS 27356 (E.D.N.Y. Feb. 24, 2017)
> *report and recommendation adopted as modified,*
> No. 15CV4381, 2017 U.S. Dist. LEXIS 164676 (E.D.N.Y. Sept. 30, 2017) .......... 11

*Setty v. Synergy Fitness,*
> No. 17CV6504, 2019 U.S. Dist. LEXIS 47236 (E.D.N.Y. Mar. 21, 2019) ............. 10, 12

*Stampf v. Long Island  Railroad Co.,*
> 761 F.3d 192 (2d Cir. 2014).................................................................................. 10

*Trs. of Local 807 Labor-Mgmt. Pension Fund v. Mar. Fish Prods.,*
> 11 CV 844, 2012 U.S. Dist. LEXIS 93211 (E.D.N.Y. May 31, 2012) .................... 1

*Turley v. ISG Lackawanna, Inc.,*
> 774 F.3d 140 (2d Cir. 2014).................................................................................. 17

*Vasbinder v. Scott,*
> 976 F.2d. 118 (2d Cir. 1992)................................................................................. 20

*Villalta v. JS Barkats, P.L.L.C.,*

16-CV-2772, 2021 U.S. Dist. LEXIS 75071 (S.D.N.Y April 16, 2021) .................. 9

*Walia v. Vivek Purmasir & Assocs. Inc.,*
    *160 F. Supp. 2d 380 (E.D.N.Y. 2000)*) .................................................................... 24

## **Secondary Sources**

W. Page Keeton, Prosser & Keeton on the Law of Torts § 41, at 263 (5th ed. 1984) .......... 4

Defendant Daniel Hernandez a/k/a Tekashi 6ix 9ine, submits his Opposing Findings of Facts and Conclusions of Law in response to Plaintiffs' Proposed Findings of Fact and Conclusions of Law with respect to the issue of damages. Simply put, Plaintiffs have not carried their respective substantial burdens of establishing damages.

## I.   <u>The Applicable Law</u>

Given that Plaintiffs entire proof of damages consists of their counsel's citations to case law in purportedly comparable situations – which they are not – supported only by counsel's declaration concerning damages based on those cases – and given defendant's legal and factual submissions herein that clearly challenge the basis for those purported damages, this Court should hold a hearing in order to properly decide these issues with reasonable certainty. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154-155 (2d Cir. 1999). *See also Trs. of Local 807 Labor-Mgmt. Pension Fund v. Mar. Fish Prods.,* 11 CV 844, 2012 U.S. Dist. LEXIS 93211, *38 (E.D.N.Y. May 31, 2012).

### A.   <u>The Standards for Damages Inquest on Default</u>

At the post-default inquest stage, the plaintiff has the burden of proving damages, while the defendant, in turn, has an opportunity to contest the amount. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992)*, cert. denied,* 506 U.S. 1080, 113 S. Ct. 1049, 122 L. Ed. 2d 357 (1993).

"[A]lthough a 'default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability,' it does not reach the issue of damages." *Bolivar v. FIT Int'l Grp. Corp.,* No. 12-CV-0781, 2017 U.S. Dist. LEXIS 39887, *40 (S.D.N.Y. Mar. 16, 2017), *adopted by* 2019 U.S. Dist. LEXIS 161718 (Sept. 20, 2019) (*quoting Bambu Sales, Inc. v. Ozak Trading, Inc*., 58 F.3d 849, 854 (2d Cir. 1995) and *citing Ferri v. Berkowitz*, 561

F. App'x 64, 65 (2d Cir. 2014)). *"A plaintiff must therefore substantiate his claim for damages with admissible evidence to prove the extent of those damages." Id.* (*quoting Hounddog Prod., L.L.C. v. Empire Film Grp., Inc*., 826 F. Supp. 2d 619, 627 (S.D.N.Y. 2011)). *See Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 90 (E.D.N.Y. 2020) (allegations of liability are deemed admitted upon default; allegations of damages are not). Rather, a court must ensure that there is an adequate basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *Id.* (*citing Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989)).

### B. Damages Must Be Established with Reasonable Certainty

*"*The plaintiff also bears the burden to *'*introduce sufficient evidence to establish the amount of damages with reasonable certainty.*'" Bolivar*, 2017 U.S. Dist. LEXIS 39887 at 41 (*quoting RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No. 12-CV-1369, 2013 U.S. Dist. LEXIS 55804 (S.D.N.Y. Apr. 18, 2013), *adopted by* 2013 U.S. Dist. LEXIS 120508, (Aug. 23, 2013)). The plaintiff must establish his entitlement to damages through admissible evidence. *Braccia v. D'Blass Corp*., 2011 U.S. Dist. LEXIS 77215, \*\*8-9 (S.D.N.Y. June 13, 2011), *report and recommendation adopted*, 2011 U.S. Dist. LEXIS 77386 (S.D.N.Y. July 18, 2011).  *See also McLaughlin v. Barron*, 2018 U.S. Dist. LEXIS 12507, \*6 (S.D.N.Y. Jan. 24, 2018) (plaintiff must *"*substantiate a claim with evidence to prove the extent of damages*"*), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 26948 (S.D.N.Y. Feb. 20, 2018).

"While a plaintiff is entitled to all reasonable inferences in its favor based upon the evidence submitted, if a plaintiff fails to demonstrate its damages to a reasonable certainty, then the court should decline to award any damages, even where liability has been established

through default." *Bolivar,* 2017 U.S. Dist. LEXIS 39887 at. *See also Griffiths v. Francillon,* No. CV 10-3101, 2012 U.S. Dist. LEXIS 54681, *2 (E.D.N.Y. Jan. 30, 2012 ) (recommending that no damages be awarded because motion papers alone were insufficient to support an award of damages), *report and recommendation adopted,* 2012 U.S. Dist. LEXIS 54683, *3 (E.D.N.Y. Apr. 13, 2012); *Dor Yeshurim, Inc. v. A Torah Infertility Medium of Exch.,* No. CV 10-2837, 2011 U.S. Dist. LEXIS 153153, *14-15 (E.D.N.Y. Aug. 10, 2011) (finding that "Complaint and plaintiff's papers in support [were] woefully inadequate to support any monetary relief," and thus recommending that neither profits nor damages be awarded), *report and recommendation  adopted*, 2012 U.S. Dist. LEXIS 17655, *3 (E.D.N.Y. Feb. 10, 2012); *Liberty Mut. Ins. Co. v. Luxury Transp. Mgmt. Inc.*, No. CV 07-0608, 2009 U.S. Dist. LEXIS 124326, *38-39 (E.D.N.Y. Mar. 19, 2009) (finding that plaintiff failed to establish that it was entitled to any damages by virtue of defendant's liability for negligent and intentional misrepresentation, or breach of contract, and recommending that the court award no damages to plaintiff for these claims*), report and recommendation adopted*, 2009 U.S. Dist. LEXIS 32253, *1 (E.D.N.Y. Apr. 15, 2009)  Regardless of the submitted proofs or testimony, though, damages awarded upon a defendant's default *"*must not differ in kind from, or exceed in amount, what is demanded in the pleadings.*"* *Belizaire v. Rav Investigative & Sec. Servs.*, 61 F. Supp. 3d 336, *345 (S.D.N.Y 2014) (*citing* Fed. R. Civ. P. 54(c)).

### C.  Plaintiffs Must Prove Causation.

Plaintiffs are only entitled to recover for damages proven to have been a result of the conduct by the Defendant in violation of the law. *See Ali v. Kipp*, 891 F.3d 59, 65 (2d Cir. 2018) (upholding jury verdict that awarded no compensatory damages after a finding of excessive force where no proximate cause proven).

Thus, a requirement of any cause of action in tort *"*is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered.*"* *W. Page Keeton, Prosser & Keeton on the Law of Torts* § 41, at 263 (5th ed. 1984). Because the purpose of compensatory damages is to compensate the plaintiff for an injury caused by a defendant, one principle of causation is that the defendant*'*s conduct be a *"*but for*"* cause of plaintiff*'*s injuries. *Meyers v. Epstein*, 282 F. Supp. 2d 151, 154 (S.D.N.Y 2003) (*citing Carey v. Piphus*, 435 U.S. 247, 254-55, 55 L. Ed. 2d 252, 98 S. Ct. 1042 (1978)).

Stated otherwise, *"*an act or omission is not regarded as a cause of an event if the particular event would have occurred without it.*"* *Keeton, supra*, § 41, at 265. In addition to *"*but for*"* causation, the plaintiff must prove his or her losses were proximately caused by defendant*'*s actions. *Baker v. Drake*, 53 N.Y. 211, 211 (1873); *Hanley v. St. Charles Hosp. & Rehab. Ctr.*, 307 A.D.2d 274, 763 N.Y.S.2d 322, 324 (2d Dep*'*t 2003).

Thus, under New York law, any damages recovered must be the direct result of defendant*'*s wrongful actions. *See, e.g., Roth v. Hudson Transit Lines, Inc.*, 72 Misc. 2d 999, 1002, 340 N.Y.S.2d 224 (N.Y. Sup. Ct. 1972) (*"*Moreover, in order to recover damages in a personal injury action as herein, the plaintiff has the burden of proving not only the extent of his injuries, but that each injury is the direct result of the defendant*'*s wrongful act.*"*).

**D.  Damages for Pre-Existing Conditions Must Be Specifically Pled and Proved.**

In *Ortiz v. Mendolia*, 116 A.D.2d 707. 497 N.Y.S. 2d 761 (2d Dep*'*t 1986), the Appellate Division affirmed a trial court*'*s limiting instruction to the jury which found for the Defendants in a litigation concerning damages arising from a car accident:

> *"*Plaintiff is not entitled to recover for any physical ailment or disability which existed prior to the collision or from any injuries which she may now be suffering which were not caused or contributed by the collision of December 17, 1979.  Recovery must be confined to those damages due to

> the enhancement and aggravation of the pre-existing condition, not the condition itself, and only to those damages which flowed from the December 17, 1979 accident, and nothing more*"* (emphasis added).

116 A.D.2d at 708-709. *See also Mihileas v. State*, 266 A.D.2d 866, 697 N.Y.S.2d 891, 892 (4th Dep't 1999) (*citing Ortiz*, court found *"*Claimant may recover only for such increased pain and suffering caused by defendant's acts.*"*)

Citing the *Ortiz* precedent, the court in *Ruscito v County of Suffolk,* strictly enforced the causation element for damages, when it limited a plaintiff's recovery of damages to those arising solely from the exacerbation of the pre-existing injuries: "[a]s for damages, the jury will be charged that the Plaintiff may recover only for such increased or augmented suffering or damage as are caused by the Defendant's act.*" Ruscito,* 2016 N.Y. Misc. LEXIS 4981, *13, 2016 NY Slip Op 32678(U), **6 (Sup. Ct. Suffolk Co. May 19, 2016).

However, the aggravation of a pre-existing disease or injury must be specifically pleaded and proved before the court will allow recovery for the same. *Ruscito*, 2016 N.Y. Misc. LEXIS 4981 at *13. *See also Anderson v Dainack*, 39 A.D.3d 1065, 834 N.Y.S.2d 564 (3d Dep't 2007); *Johnson v. Grant,* 2 A.D. 3d 720, 770 N.Y.S. 2d 487 (3d Dep't 2004)*; Behan v Data Probe Intern., Inc.*, 213 A.D.2d 439, 623 N.Y.S.2d 886 (2d Dep't 1995); De *Mento v Nehi Beverages, Inc.*, 55 A.D.2d 794, 389 N.Y.S.2d 909 (3d Dep't 1976); *Von Sydow v. Long Beach Bus Co*., 249 A.D. 838, 292 N.Y.S. 662, 663 (2d Dep't 1937)

In *Rodgers v New York City Tr. Auth*, the Second Department reversed a trial court's decision to allow a jury to consider the issue of the aggravation of a pre-existing condition that was neither specifically pleaded nor proved.  Indeed, the appellate court held:

> Here, it is undisputed that the plaintiff failed to allege, either in his complaint or in his six bills of particulars, that he sustained an aggravation of any preexisting degenerative disc condition. Accordingly, it was error for the court to charge, pursuant to PJI 2:283, and over the defendants'

objection, that the jury could award damages for increased susceptibility to injury, based upon an alleged preexisting condition.

70 A.D.3d 917, 919, 896 N.Y.S.2d 112, 116 (2d Dep't 2010).

Thus, in *Carroll v. United States*, 295 Fed. Appx. 382, 2008 U.S. App. LEXIS 2127 (2d Cir. 2008) the Second Circuit upheld the reduction of an award for damages that were improperly based on a pre-existing condition:

> The district court's finding that Carroll's injury partially preexisted the VA's malpractice is also supported by the evidence. *See Kirschhoffer*, 173 A.D.2d at 9 (stating that plaintiffs may only recover for those injuries actually caused by defendants' negligence); *Mihileas v. State*, 266 A.D.2d 866, 866, 697 N.Y.S.2d 891 (4th Dep't 1999) (holding that a plaintiff with a preexisting condition may only recover for *"increased pain and suffering caused by [the] defendant's acts"*).  Both Carroll's trial testimony and his medical records reflect that he experienced symptoms a year before he sought treatment at the VA, and his expert corroborates that the VA misdiagnosis was not the sole cause of the harm he suffered. Thus, the district court's reduction of Carroll's award to account for his preexisting condition is supported by the evidence in the record.

295 Fed. Appx. at 386, 2008 U.S. App. LEXIS 2127 at **7.

In the case before this Court, the Complaint makes no reference to pre-existing conditions for either plaintiff.  *See* Complaint, *passim*.  Indeed, the Complaint specifically and repeatedly alleges that *"Plaintiffs were harmed by Defendant's conduct, suffering extreme emotional and mental anguish as well as financial harm."* Complaint, ¶¶70 (Assault); 80 (Battery); and 90 (False Imprisonment).  It was Defendant's purported involvement in these prior alleged torts that led Plaintiffs to plead *"These wrongful actions were the proximate cause of Plaintiffs' severe emotional distress." Id.*, ¶96 (Intentional Infliction of Emotional Distress).  Plaintiffs did not plead or prove an aggravation of a preexisting condition, precluding recovery on that theory. *Johnson v. Grant*, 3 A.D.3d 720, 721, 770 N.Y.S.2d 487, 489 (3d Dep't 2004).

This has been confirmed in the supporting declarations of both Plaintiffs. For example, Plaintiff Wonzer specifically states: *"This violent gunpoint robbery has caused me severe emotional distress, leading me to suffer from post-traumatic stress disorder (PTSD")*. *See* Ex. L., ¶10.  She specially states that her symptoms occurred *"[s]ince the assault." Id.* ¶11.  She again reaffirms her purported symptoms are a result of *"[m]y PTSD arising from the armed robbery". Id.*, ¶12.

These symptoms include *"periods of intense depression, crying episodes, lack of motivation and nightmares"* and *"little interest in life anymore and cannot find pleasure in anything"* and she claims, *"many episodes of suicidal thoughts due to reliving this trauma over and over again." Id.*

She continues to tie and time all of these symptoms to the assault.  *See Id.*, ¶¶14-18. She concludes quite specifically that *"[a]ll of these symptoms were caused by Defendant's violent assault of me." Id.* ¶19.

These allegations are repeated in the submitted Proposed Findings of fact and Conclusions of Law. See Doc #50, ¶¶28-37.  And Plaintiff assert that *"[e]ven though Wonzer has been treated through therapy and counseling from various practitioners for multiple years since the assault, she unfortunately has not recovered, and she believes the above-described symptoms will last indefinitely." Id.*, ¶38.

Indeed, the Plaintiffs then quote from a report by Todd Deneen, a Clinical Neuropsychologist, who evaluated Ms. Wonzer and issues a Neurological Evaluation dated February 4, 2022, which mentions that *"Ms. Wonzer reported several trauma related symptoms in response to the 4/03/2018incident. . . [and that] [b]ased on the findings in her reported history and current symptomology, and with a reasonable degree of psychological

certainty, her PTSD diagnosis has a causal relationship to the 4/03/2018incident. *Ms. Wonzer's depressive diagnosis is also retained based on her psychological history."*

Similarly, Plaintiff Dozier confirms in his supporting declaration that the *"violent gunpoint robbery has caused me severe emotional distress, including post-traumatic stress disorder ("PTSD"). See Ex*. M, ¶8.  Like Ms. Wonzer, Mr. Dozier states that *"*[a]fter this assault*"* he suffered *"*intense fear,*"* was *"*depressed,*"* suffered *"*anxiety*"* and *"*intense depression*"* and *"*panic attacks,*"* and that *"*[a]ll of these symptoms were caused by this violent gunpoint assault.*" Id*., ¶¶9-15.

These allegations were also confirmed in the Proposed Findings of Fact and Conclusions of Law. See Doc #50, ¶¶41-48. And like Ms. Wonzer, Plaintiff have represented that *"*[w]hile Dozier has received emotional therapy and counseling from various providers for years since the assault, he has not recovered, and he does not see these symptoms ending anytime soon.*" Id*., ¶49.

When it came to Mr. Deneen's February 4, 2022 Neurological Evaluation of Mr. Dozier, like with Ms. Wonzer, Mr. Deneen ties Dozier's PTSD solely to the 4/03/2018robbery.  However, unlike with Ms. Wonzer, Mr. Deneen mentions a first and only reference in the Court's record to Dozier's *"previous diagnosis of depression in 2008"* . . . and that *"*[w]ith a reasonable degree of psychological certainty, the onset of his psychological conditions and his diagnoses of PTSD and *major depressive disorder*, demonstrates a causal relationship to Mr. Dozier's 4/03/2018incident, *as well as significant exacerbation of his depression as a result of this incident." Id.* ¶50.

Mr. Deneen does not explain or support this throw away comment.

This was the first time that the Plaintiffs' pre-existing mental conditions were mentioned in the record in connection with this matter and the first time that damages were attempted to be associated with the exacerbation of these pre-existing conditions. According to the above cited case law, this is totally improper and cannot support Plaintiffs claim for damages. Moreover, generally speaking, "'[a] plaintiff's subjective testimony, standing alone,' is 'insufficient to sustain an award of emotional distress damages.'" *Poulos v. City of New York*, 14-CV-03023, 2018 U.S. Dist. LEXIS 118364, *12 (S.D.N.Y. July 13, 2018) (*quoting Patrolmen's Benevolent Ass'n. of City of New York v. City of New York*, 310 F.3d 43, 55 (2d Cir. 2002)). "The subjective testimony must be 'substantiated by other evidence that such an [emotional] injury occurred, such as the testimony of witnesses to the plaintiff's distress, or the objective circumstances of the violation itself.'" *Id.* (citation omitted). Finally, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *See Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) (holding damages arising from a judgment by default be limited to those specified in the "demand clause" of the complaint).

At the end of pre-inquest discovery, Plaintiffs' counsel provided Defendants with the Neuropsychological Evaluations of Mr. Dozier and Ms. Wonzer. *See* Plaintiffs 001738-1748 (filed under seal).

**II.      At Most, Plaintiffs Suffer From Garden Variety Emotional Distress.**

**A.      Compensatory Damages.**

Compensatory damages may also include damages for emotional harm. *Villalta v. JS Barkats, P.L.L.C.*, 16-CV-2772, 2021 U.S. Dist. LEXIS 75071, *36 (S.D.N.Y April 16, 2021). Although "[a]wards for mental and emotional distress are inherently speculative ... a legal

system [nevertheless] has an obligation to ensure that such awards for intangibles be fair, reasonable, predictable, and proportionate." *Ravina v. Columbia University*, No. 16-CV-2137, 2019 U.S. Dist. LEXIS 56556, *36 (S.D.N.Y. March 31, 2019) (alterations and omission in original) (*quoting Stampf v. Long Island Railroad Co.*, 761 F.3d 192, 205 (2d Cir. 2014)).

"To obtain emotional distress damages, a plaintiff must establish actual injury and the award must be 'supported by competent evidence' in addition to the plaintiff's subjective testimony." *Nainin v. Dollar Mountain, Inc*., No. 14 Civ. 5758, 2015 U.S. Dist. LEXIS 141811, *6 (S.D.N.Y. Sept. 25, 2015) (*quoting Patrolmen's Benevolent Ass'n v. City of New York*, 310 F.3d 43, 55 (2d Cir. 2002).

Courts in this district have adopted a three-tiered approach to awarding emotional distress damages, depending on whether the case is *"garden-variety," "significant,"* or *"egregious." See Setty v. Synergy Fitness*, No. 17CV6504, 2019 U.S. Dist. LEXIS 47236, *11 (E.D.N.Y. Mar. 21, 2019). *"This approach has been used in damages inquests on default judgments as well as in reviews of jury verdicts." Gutierrez v. Taxi Club Mgmt., Inc.*, No. 17CIV532, 2018 U.S. Dist. LEXIS 106808, *21 (E.D.N.Y. June 25, 2018), *report and recommendation adopted,* No. 17CV0532, 2018 U.S. Dist. LEXIS 118262 (E.D.N.Y. July 16, 2018).

For typical or garden-variety emotional distress claims, district courts have awarded damages ranging from $5,000 to $35,000, based upon the plaintiff's vague or conclusory testimony of distress. *Manson v. Friedberg*, 08 CIV. 3890, 2010 U.S. Dist. LEXIS 145499, *11 (S.D.N.Y. June 13, 2013) (granting a $10,000 damage award for plaintiff who suffered low self-esteem, lacked confidence in herself, and lacked physical manifestations of her

emotional distress). *See also Santiago v. Crown Heights Ctr. for Nursing & Rehab.*, No. 15CV4381, 2017 U.S. Dist. LEXIS 27356, *63 (E.D.N.Y. Feb. 24, 2017) ($30,000 award where plaintiff experienced "anxiety, stress, shame and embarrassment, and loss of self worth"), *report and recommendation adopted as modified*, No. 15CV4381, 2017 U.S. Dist. LEXIS 164676 (E.D.N.Y. Sept. 30, 2017); *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 153-54 (E.D.N.Y. Aug. 19, 2013) (awarding plaintiff $30,000 in emotional distress damages where plaintiff's claim for mental anguish and emotional distress is based on her Complaint, her affidavit, and her attorney's declaration"); *Fowler v. New York Transit Auth.*, No. 96 Civ. 6796, 2001 U.S. Dist. LEXIS 762, *52 (S.D.N.Y. Jan. 31, 2001) (reducing emotional distress award from $50,000 to $25,000, where the plaintiff "did not present any evidence detailing the duration or magnitude of his emotional injuries, nor did he present evidence of medical or psychological treatment").

For a "significant" emotional distress claim, where a plaintiff has suffered "more substantial harm, usually evidenced through medical testimony or documentation," courts have awarded damages ranging from $50,000 to $100,000. *Joseph*, 970 F. Supp. 2d at 153 (internal quotations and citations omitted). *See Olsen v. Cty. of Nassau*, 615 F. Supp. 2d 35, 47-49 (E.D.N.Y. 2009) (upholding award of $100,000 where plaintiff had documented medical evidence that she suffered from depression, lack of sleep, powerlessness, and lack of motivation); *Hill v. Airborne Freight Corp.*, 212 F. Supp. 2d 59, 67-68, 73-74 (E.D.N.Y. 2002) (reducing a jury award of $150,000 to $50,000 for a plaintiff who established "numerous instances where managers made disparaging remarks about African Americans" and a negative effect on his personal and professional life, but who did not pursue a course of psychological treatment); *Bert v Port Auth. of N.Y. & N.J.*, 166 A.D.2d 351, 352, 561 N.Y.S.

11

2d 416 (1ˢᵗ Dep't 1990) (in case involving *"racial overtones"* where police assaulted plaintiff, detained him for 3-1/2 hours, and called him a pimp, court sustained $100,000 compensatory award for *"the abject humiliation to which [plaintiff] was subjected in the presence of young and impressionable members of his family and the strain the incident has imposed upon his relationship with his stepdaughter"*)

Finally, in egregious cases, where the conduct was outrageous and shocking or where the physical health of plaintiff was significantly affected, damages have been awarded in excess of $100,000. *Setty*, 2018 U.S. Dist. LEXIS 213878, *49 (awards of this magnitude "have only been warranted where the discriminatory conduct was outrageous and shocking or where the physical health of plaintiff was significantly affected." (internal citations omitted")) See, e.g., *Antoine v. Brooklyn Maids 26, Inc.,* 489 F. Supp. 3d 68, 78-79, 99-100 (E.D.N.Y. 2020) (finding that emotional distress award of $200,000 *"strikes a proper balance between the traumatic abuse plaintiff suffered and the near complete absence of corroborating evidence"* where defendant employer, who defaulted, made repeated sexual advances, coerced plaintiff into having sex, withheld pay in retaliation for plaintiff's request to maintain professional relationship, and ultimately threw plaintiff against a wall, choked her, and told her never to come back); *Garcia v. Comprehensive Center, LLC*, No. 17-CV-8970, 2019 U.S. Dist. LEXIS 203447, *20-21 (S.D.N.Y. Nov. 21, 2019) (awarding $175,000 in emotional distress damages to plaintiff who *"suffered physical violence, harassment, and discrimination for more than a year, leading to psychological treatment"* including therapy and medication for diagnoses of PTSD and major depressive disorder), *adopted,* 2020 U.S. Dist. LEXIS 50791 (S.D.N.Y. March 24, 2020); *Gutierrez v. Taxi Club Management Inc*., No. 17-CV-532 (AMD) (VMS), 2018 U.S. Dist. LEXIS 106808, *24 (E.D.N.Y. June 25, 2018)

(recommending $130,000 emotional distress award where plaintiff endured severe and intense sexually harassing behavior that caused her migraine headaches, nausea, vomiting, sleep disorders, and anxiety lasting for over eighteen months), *adopted*, 2018 U.S. Dist. LEXIS 118262 (E.D.N.Y. July 16, 2018).

Defendant's psychiatric expert, Dr. Stephen H. Dinwiddie, MD, has reviewed Plaintiffs' complete medical records produced in this action, the February 4, 2022 documents submitted by Todd Deneen, Psy.D., entitled "Neuropsychological Evaluation(s)," the Complaint, with Exhibits, the Incident Video[1], the document prepared by Counsel entitled "Description of 4-3-2018 incident videos" (incorporated in the Meloni Declaration at ¶¶13, 15, 16-17 and 19), Plaintiff's Statement of Facts and Conclusions of Law and Plaintiff's Proposed Findings, and has provided a "Preliminary Report"[2] for each Plaintiff, while he awaits the decision as to whether he will be able to interview them.  ***See* Meloni Dec., Exhibits D & E.**

### (a) <u>Fact – Plaintiffs Have Not Proven Their Purported Medical Conditions</u>

After a detailed analysis of the written records, Defendant's expert, Stephen H. Dinwiddie, MD,[3] has concluded "with a reasonable degree of medical certainty," that with respect to Plaintiff Dozier, "the diagnosis of Posttraumatic Stress Disorder cannot be substantiated," and "the diagnosis of Major Depressive Disorder cannot be substantiated." *Id.*, Ex. D., Dozier Report, pp. 14-16.

---

1. The Court may take judicial notice of websites pursuant to Federal Rule of Evidence 201. *See May v. Sony Music Entertainment*, 389 F.Supp.3d 169 (S.D.N.Y. 2019).

2.  Dr. Dinwiddie's Report is classified "Preliminary" based solely upon his inability to directly interview the Plaintiffs but stands firmly on his extensive analysis of the voluminous medical records and his unassailable expertise.  ***See* Meloni Dec., Exs. D & E.**

3. A copy of Dr. Dinwiddie's extensive CV establishes his unassailable credentials**.  *See* Meloni Dec., Ex. F.**

After a detailed written analysis of Wonzer's medical records and other documentation, Dr. Dinwiddie has also concluded "with a reasonable degree of medical certainty," that with respect to Plaintiff Wonzer, her bipolar condition "was <u>not</u> caused or exacerbated by the 4/3/2018 incident". Similarly, her anxiety disorder "was <u>not</u> caused or exacerbated by the 4/3/2018 incident." Finally, "the diagnosis of Posttraumatic Stress Disorder cannot be substantiated," and "to the extent that any PTSD symptoms were accurately reported [] there is the possibility of misattribution (i.e., the inaccurate attribution of accurately reported symptoms)." *Id.,* Ex. E., Wonzer Report, pp. 19-24.

In short, Plaintiffs have not carried their burden of proof to a reasonable certainty.

And it is no wonder that neither Plaintiff suffered their purported disorders. An examination of the video of the 4/03/2018 event, using the second counter along the bottom of the video establishes a few very important facts that go directly to the issue of damages Plaintiffs have claimed for emotional distress – including the primary factor of the egregiousness of the event: (1) the entire event lasted 10 seconds for Plaintiff Wonzer during which she was not physically accosted by any of the five gang members, before she ran out of the building and down the block; (2) there was only one Nine Trey Gang member with a handgun, and he never pointed it at either Plaintiff, instead keeping it pointed down at the ground throughout the whole event; (3) the entire event lasted 26 seconds for Plaintiff Dozier, not the 2-3 minutes he claims, during which time he was not physically assaulted beyond one of the gang members placing his left hand on Dozier's right shoulder and later, a different gang member relieving him of his personal belongings and/or money without any physical violence; and (4) Defendant was not actually physically present inside the building vestibule where the event took place. **See Meloni Dec. ¶¶12-23 and Exhibit A, thereto**.

In fact, cases with far worse combinations of egregious conduct, harm inflicted, and level of corroboration have yielded emotional distress awards of far more modest amounts than the $560,000 each that Plaintiffs are seeking here. *See, e.g., Antoine v. Brooklyn Maids 26, Inc.,* 489 F. Supp. 3d 68, 78-79, 99-100 (E.D.N.Y. 2020) (finding that emotional distress award of $200,000 "strikes a proper balance between the traumatic abuse plaintiff suffered and the near-complete absence of corroborating evidence" where defendant employer, who defaulted, made repeated sexual advances, coerced plaintiff into having sex, withheld pay in retaliation for plaintiff's request to maintain professional relationship, and ultimately threw plaintiff against a wall, choked her, and told her never to come back); *Garcia, v. Comprehensive Ctr.*, 17-CV-8970, 2019 U.S. Dist. LEXIS 203447, *21 (S.D.N.Y. Nov. 21, 2019) (awarding $175,000 in emotional distress damages to plaintiff who "suffered physical violence, harassment, and discrimination for more than a year, leading to psychological treatment" including therapy and medication for diagnoses of PTSD and major depressive disorder), *R. & R. adopted*, 2020 U.S. Dist. LEXIS 50791 (S.D.N.Y. March 24, 2020); *Caravantes v. 53rd St. Partners, LLC*, No. 09 Civ. 7821, 2012 U.S. Dist. LEXIS 120182 *78 (S.D.N.Y. Aug. 23, 2012) (awarding $150,000 in emotional distress damages where supervisor's harassment caused plaintiff to suffer sleep disorders, marital problems, major depressive disorder, and suicidal thoughts).

Plaintiffs have not and cannot support their demands for $564,000 in compensatory damages and their claims for such damages must be rejected out of hand, or significantly reduced to a far more reasonable amount by the Court.

### B. **Dozier Cannot Recover Twice**

*"*A plaintiff may not recover twice for the same injury.*" Phelan v. Local 305 of United Ass'n of Journeymen*, 973 F.2d 1050, 1063 (2d Cir. 1992). Given that the two asserted claims overlap to recover for the same injuries, Dozier is limited to the damages awarded under one of those claims. *See Lewis Family Group Fund Lp v. Js Barkats Pllc*, 2021 U.S. Dist. LEXIS 62810, *40 (S.D.N.Y. March 23, 2021); *De Sole v. Knoedler Gallery, LLC*, 12 Civ. 2313 (PGG)(HBP), 2016 U.S. Dist. LEXIS 96196, *22 n.7 (S.D.N.Y July 21, 2016).   Moreover, where a defaulting defendant is being assessed treble damages under the RICO statute, those damages meet the purposes of retribution and deterrence, and a plaintiff should not be awarded punitive damages. *Lewis Family Group Fund Lp v. Js Barkats Pllc*. 2021 U.S. Dist. LEXIS 62810 at *26, n.3 (punitive damages for conversion claim held duplicative to treble damages of RICO claim).

### C. **Punitive Damages**

### 1. **Plaintiffs Must Prove Their Right To Punitive Damages.**

As with other claims of damages, when considering a claim for punitive damages on a default inquest, the Court cannot accept as true the well pleaded facts of the Complaint. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."). Courts must engage in an independent and "'detailed appraisal of the evidence bearing on damages.'" *Hughes v. Patrolmen's Benevolent Ass'n*, 850 F.2d 876, 883 (2d Cir. 1988) (*quoting Grunenthal v. Long Island R.R.*, 393 U.S. 156, 159, 21 L. Ed. 2d 309, 89 S. Ct. 331 (1968)). The courts have an obligation to ensure that such awards for intangibles be fair, reasonable,

predictable, and proportionate. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 499, 128 S. Ct. 2605, 171 L. Ed. 2d 570 (2008) ("Courts of law are concerned with fairness as consistency . . ."). "The courts, accordingly, bear the responsibility to ensure that judgments as to punitive damages conform, insofar as reasonably practicable, to those *desiderata* and are not excessive." *Payne v. Jones*, 711 F.3d 85, 96 (2d Cir. 2012).

In reviewing an award of punitive damages for excessiveness, courts consider "three guideposts" established by the Supreme Court in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589, 1598-99, 134 L. Ed. 2d 809 (1996): "(1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages, and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir 1996).

Indeed, the reprehensibility factor is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 167 (2d Cir. 2014) (*citing, inter alia, Gore*, 517 U.S. at 575, 116 S. Ct. at 1599).

Thus, as part of their burden at this inquest, Plaintiffs must submit evidence that demonstrates that the "defendant's conduct was driven by an evil motive or intent, or that it involved a reckless or callous indifference to plaintiff's federally protected rights." *Carrion v. Agfa Constr., Inc.*, 720 F.3d 382, 387 (2d Cir. 2013). While a defendant's conduct is obviously germane to the damages issue, "'even outrageous conduct will not support an oppressive or patently excessive award of damages.'" *Brink's Inc. v. City of New York*, 546 F. Supp. 403, 413-14 (S.D.N.Y. 1982) (internal quotation omitted), *aff'd*, 717 F.2d 700 (2d Cir. 1983).

Plaintiffs' recitations on this first issue are limited to "Hernandez apparently videotaped the entire incident from the black Suburban SUV." *See* Plaintiffs' Ex. L., Wonzer Dec., ¶8; Ex. M, Dozier Dec., ¶7.  The remainder of the allegations concerned the actions of "five armed gunmen" who are not before this Court, and who actually committed the "violent gunpoint robbery" at issue, and another non-party, "Vlogger, DJ Akademiks," posted the video on social media. Id., Ex. L. ¶¶ 6-7; Ex. M ¶¶5-6; Complaint, ¶15.

These facts are totally inadequate to support the kind of damages Plaintiffs seek here. Indeed, a review of the actual video of the event completely undercuts Plaintiffs' unsupported proof on this issue. ***See* Meloni Declaration, ¶¶1, 11-22, and Ex. A.**

**(a) Fact – Defendant Had No Evil Motive.**

Finally, Defendant has submitted his declaration which establishes without a doubt that there was no malevolence or evil motive on his part in what occurred on 4/03/2018:

a. He was only at the scene of the 4/03/2018 event because he happened to be riding in the same car as the Trey Nine members when one of them decided to commit the robbery of a Rap-A-Lot member;
b. He never left the SUV throughout the event;
c. He did not upload the video to social media;
d. He was not in the vestibule or hallway at issue when the event took place;
e. He did not ever hold a gun during the event;
f. He never physically met either Plaintiff;
g. He was sentenced to two years in federal prison as a result of his role as a member of the Nine Trey gang.
h. The bag that was stolen was seized by the police and either returned to Plaintiffs or is still in the government's custody.

*See* Meloni Dec. Ex. B (Declaration of Daniel Hernandez, sworn to March 7, 2022, ¶¶9-18)

There is nothing in the record before this Court that contradicts Defendant's representations or the video evidence that supports it.

It is the duty of a court, as reaffirmed in countless cases involving large damage awards, "'to keep a verdict for punitive damages within reasonable bounds considering the

purpose to be achieved as well as the *mala fides* of the defendant in the particular case."'" *Aldrich v. Thomson McKinnon Sec.*, 756 F.2d 243, 249 (2d Cir. 1985) (*quoting Lanfranconi v. Tidewater Oil*, 376 F.2d 91, 97 (2d Cir.) (internal citations omitted), *cert. denied*, 389 U.S. 951, 88 S. Ct. 334, 19 L. Ed. 2d 361 (1967)).

Indeed, given that the actual perpetrators of the purported assault are not actually before the Court, and that the Defendant's role in the total of 26 second event on 4/03/2018 was solely to sit in a car across the street and video whatever could actually be seen from outside the building, must be factored into any award by this Court of punitive damages. *See Munson v. Diamond*, 15-CV-00425, 2017 U.S. Dist. LEXIS 85143, **23-24 (S.D.N.Y. June 1, 20017) (Court rejected demand of $450,000 in punitive damages and awarded $30,000, holding, "[a]lthough some amount of punitive damages is warranted, based on Diamond's conduct, the amount sought is excessive, particularly in light of the relatively short period of time at issue and the fact that the individual who actually committed the outrageous conduct is not before the Court."). Defendant's relatively passive *mal fides* in this case must be factored in by this Court when reaching its determination on the punitive damages issue in order to be "fair, reasonable, predictable and proportionate."

### 2. __Punitive Damages Must Not Be A Windfall For Plaintiffs.__

When considering the second BMW factor in determining the amount of punitive damages, "courts should presume that the plaintiff has been made 'whole' through their compensatory damages award." *Greathouse v. JHS Sec. Inc.*, No. 11 Civ. 7845, 2015 U.S. Dist. LEXIS 154388, *21 (S.D.N.Y. Nov. 13, 2015) (*quoting State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 419 (2003)), *adopted by* 2016 U.S. Dist. LEXIS 115494 (S.D.N.Y. Aug. 29, 2016). Further, because neither compensation nor enrichment is a valid purpose of

punitive damages, an award should not be so large as to constitute "a windfall to the individual litigant." *Aldrich*, 756 F.2d at 249. *See also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981) (Because punitive damages are awarded over and above full compensatory damages to cover a plaintiff's actual losses, punitive damages have been characterized as "a windfall to a fully compensated plaintiff.")  Plaintiffs are seeking an absolute and improper windfall by their repulsive demand for a 9.52 to 1 factor as against their already unsupportable demand for compensatory damages.

### 3.  <u>Punitive Damages Must Not Bankrupt The Defendant.</u>

Similarly, when courts are considering the second BMW factor, they have "recognized that one purpose of punitive damages is deterrence, and that deterrence is directly related to what people can afford to pay." *Patterson v. Balsamico*, 440 F.3d 104, 122 (2d Cir. 2006). *See Vasbinder v. Scott*, 976 F.2d, 118, 121 (2d Cir. 1992) .

If punitive damages are warranted, they should not "result in the financial ruin of the defendant" or "constitute a disproportionately large percentage of a defendant's net worth." *Vasbinder*, 976 F.2d at 121 (*citing Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 373 (2d Cir. 1988)).  Thus, courts must not affirm punitive damages awards that "result in the financial ruin of the defendant" or "constitute a disproportionately large percentage of the defendant's net worth." *Vasbinder*, 976 F.2d at 121. Even a defendant's outrageous conduct will not support an oppressive or patently excessive award of damages. *Brink's Inc. v. City of New York*, 546 F. Supp. 403, 413-14 (S.D.N.Y. 1982).

Here, Plaintiffs each seek an unsupportable compensatory damage award of $564,000 and an award of punitive damages using a multiplier of 9.52 to 1, for a total award of punitive damages of $5,369,280, to each Plaintiff.  That would constitute a judgment against Defendant

totaling $10,738,560 in punitive damages and consequential damages totaling $1,128,000, for a grand total of $11,866,560. That award of damages is higher than those awarded in even the most extreme cases Plaintiffs' have attempted to rely upon in their papers.

**(a) Fact – Defendant Would Be Bankrupted By Plaintiffs' Damage Demands.**

To support their ridiculously excessive demand, Plaintiffs cite to Defendant's tax returns for the three-year period 2018 through 2020.  *See* Plaintiffs Mem. p. 10. Plaintiffs' counsel then states without any evidentiary support, that "there is no credible evidence to believe that such vast income would not continue indefinitely."  *Id,* pp. 10-11.  It is like no one has told Plaintiffs' counsel about the pandemic.[4]

Defendant has been hit particularly hard by the upheaval in the music industry, as well as by his incarceration for two years and the loss of all of the momentum he had built up prior to his 2018 arrest, which has deeply impacted his ability to earn a living in the music industry. Attached to the Meloni Declaration as **Exhibit C**, Defendant has submitted a declaration from his accountant, Justin Kobay, sworn to March 11, 2022 ("Kobay Decl."). Mr. Kobay establishes without challenge that Defendant's net income was at its highest prior to and during the year of his release from prison (2018-2020), due entirely to Defendant having received large advances two years ago from his record company (TenThousand Projects) and merchandise licensee (Homemade Projects). Kobay Decl. *passim*. From November 2018 to April 2020, Defendant was incarcerated in a federal penitentiary during which time he was unable to perform or produce music or perform at live concerts.  Kobay Decl.*,* ¶9, Hernandez Decl. ¶¶23, 27-29.   Mr. Kobay and Defendant also establish that during those years, and

---

4. *See* https://www.rollingstone.com/pro/lists/coronavirus-music-business-latest-974262

currently, Defendant supported his two infant children, their mother, as well as his other family members. Kobay Decl., ¶¶14, Hernandez Decl. ¶29.   From 2018 to most of 2020, while Defendant was incarcerated in federal prison, Defendant was completely out of the music business, which caused him to lose all the momentum he had achieved before his arrest. His ability to generate income from touring has been greatly reduced or largely eliminated. Kobay Decl., ¶¶7-10 & Ex., Hernandez Decl. ¶27-28. Over this past year, Defendant's recording contract with TenThousand Projects and a major merchandise contract with Homemade both expired, so his present and future income has been greatly diminished. Kobay Decl. ¶¶8-11, Hernandez Decl. ¶¶ 23-24. Defendant's current liabilities, including past due taxes, are greater than his assets. Therefore, his net worth is technically less than zero. Kobay Decl. ¶13.

Not only does the actual role Defendant played in the event or the purported injuries proffered by the Plaintiffs not support Plaintiffs' demand for punitive damages, but the amount sought would financially decimate the Defendant and his family.  Plaintiffs have not carried their evidentiary burden and established their right to such a vindictively punitive damage award, and it should be rejected in its entirety.

### 4.  There Is Nothing Similar In The Cases Plaintiffs Have Cited

Under the third BMW factor, courts also review the punitive damages awards in similar cases in order to gauge whether a particular punitive award is excessive. *Payne v. Jones*, 711 F.3d 85, 104 (2d Cir. 2013); *Rosas v. Baiter Sales Co. Inc.*, No. 12-CV-6557, 2018 U.S. Dist. LEXIS 109332, *28-29 (S.D.N.Y. June 29, 2018).

The comparison of punitive awards is of limited utility because each award is fact specific. *Greathouse v. JHS Sec. Inc.*, 2015 U.S. Dist. LEXIS 154388, *21 (S.D.N.Y. Nov.

13, 2015) (*quoting Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573, 580 (S.D.N.Y. 2011)), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 115494 (S.D.N.Y. Aug. 29, 2016).   Moreover, the Second Circuit has rejected using a multiplier to determine an appropriate ratio between compensatory and punitive damages when a multiplier is not the "best tool" to apply when assessing punitive damages.   *DiSorbo v. Hoy*, 343 F.3d, 172, 187 (2d Cir. 2003) (*quoting Lee v. Edwards*, 101 F.3d 805, 811 (2d Cir. 1996)).

Finally, Plaintiffs' demand for punitive damages at a ratio of 9.52 to 1 does not pass constitutional muster.   *Compare* Plaintiffs' Mem., p. 8, *with State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003) (punitive damages awards of "more than four times the amount of compensatory damages might be close to the line of constitutional impropriety."); *accord Greathouse v. JHS Sec. Inc.*, 2015 U.S. Dist. LEXIS 154388, at *21.[5]

If the Plaintiffs had carried their initial burden to prove a basis under the *BMW* standards to impose punitive damages, which they have not, and the Court were to consider other decisions, it cannot be based on the unconstitutional 9.52 to 1 factor Plaintiffs are demanding here. While Defendant's provable conduct does not rise to the level Plaintiffs suggest, even if the Court were accept those allegations at face value, punitive damages awarded in comparable situations are far lower than what Plaintiffs' demand.   *See Angulo v. 36th St. Hospitality LLC*, 19 Civ. 5075, 2020 U.S. Dist. LEXIS 137816, *41 (S.D.N.Y. July

---

5.  Thus, Plaintiffs ignore the distinction that the cases they cite in support of their onerous demand of a 9.52 to 1 ratio, seek compensatory damages sought were in the extremely low range, not one of them above five figures like the substantial amounts sought here. *See Maskantz v. Hayes*, 4 Misc. 3d 1030(A), 798 N.Y.S.2d 345 (Sup. Ct. N.Y. Co. 2004); *Rosenberg, Minc & Armstrong v. Mallilo & Grossman,* 8 Misc. 3d 394, 404 (Sup. Ct. N.Y. Co. 2005); *Diggs v. Oscar De La Renta, LLC*, 169 A.D.3d 1003, 1003-1004 (2d Dep't 2019); *Bell v. Helmsley*, No. 111085/01, 2003 WL 1453108, *6 (Sup. Ct. N.Y. Co 2005); and *Liberman v. Riverside Mem'l Chapel, Inc.*, 225 A.D.2d 283, 288, 292-93 (1st Dep't 1996).  Here, Plaintiffs seek $564,000 each in compensatory damages.

31, 2020) ("Court finds that a punitive damages award of $100,000 would reflect Casey's physical attack on Angulo and 'callous indifference' to her rights while remaining within the range of awards in similar circumstances."); *Garcia v. Comprehensive Ctr., LLC,* 17-CV-8970, 2019 U.S. Dist. LEXIS 203447, *23 (S.D.N.Y. Nov. 21, 2019) (awarding $75,000 in punitive damages to plaintiff whose supervisor called her abusive names, "slammed" her laptop closed on her fingers, "closed-fist-punched" her in the face, and grabbed her by her shirt collar and dragged her into his office); *Manswell v. Heavenly Miracle Acad. Servs., Inc.*, No. 14 Civ. 7114, 2017 U.S. Dist. LEXIS 136366, *58 (E.D.N.Y. Aug. 23, 2017) (awarding $100,000 in punitive damages where harasser repeatedly and aggressively propositioned plaintiff for sex and made crude comments over an 18-month period); *Offei v. Mahmoud Abdel-Salam Omar*, 11 Civ. 428, 2012 U.S. Dist. LEXIS 80171, *25 (S.D.N.Y. May 18, 2012) (awarding $100,000 in punitive damages where defendant sexually assaulted plaintiff leading to panic attacks, hospital treatment, and a need for anti-anxiety medication); *DeCurtis v. Upward Bound Int'l, Inc.,* No. 09 Civ. 5378, 2011 U.S. Dist. LEXIS 114001, *17 (S.D.N.Y. Sept. 27, 2011) ($75,000 in punitive damages resulting from repeated sexual harassment and workplace retaliation in violation of Title VII and state law); *Walia v. Vivek Purmasir & Assocs. Inc.*, 160 F. Supp. 2d 380, 383-86, 392 (E.D.N.Y. 2000) ($30,000 in punitive damages for plaintiff who experienced repeated instances of sexual harassment, assault, threats of physical violence, and defamation); *Patterson v. Balsamico*, 440 F.3d 104, 121 (2d Cir. 2006) ($10,000 in punitive damages where defendant had physically assaulted plaintiff, sprayed him with mace, and threatened him with racial slurs); *Medina v. Donaldson*, No. 10 Civ. 5922, 2014 U.S. Dist. LEXIS 33723, *64 (E.D.N.Y. Mar. 14, 2014) (affirming jury award of $16,000 in punitive damages, where the defendant police officer punched plaintiff while he

was handcuffed, causing a gash and bruising to his right eye, worsening his pre-existing post-traumatic stress disorder, and nightmares).

So, were this Court to decide, based upon the record before it, that Plaintiffs were entitled to punitive damages, on the most favorable interpretation for Plaintiff of that record, they should not exceed $25,000 per Plaintiff.

## CONCLUSION

Based on the foregoing, Defendant requests that the Court (1) reject Plaintiffs demand for $564,000 each in compensatory damages based on their failure to carry their burden of establishing that they have sustained the injuries they have claimed; (2) Defendant's conduct was the proximate cause of their purported injuries, and (3) reject Plaintiffs demand for punitive damages based upon their failure to carry their burden (a) of proving Defendant's conduct warrant punitive damages, and (b) failing to provide the Court with a constitutionally sound basis for calculating said damages.  In the alternative, Defendant requests that the Court reduce both compensatory and punitive damage awards to a more reasonable amount in keeping with his actual involvement in the event and the evidentiary record in this case.

MELONI & McCAFFREY APC

By: _____
      Robert S. Meloni
      Thomas P. McCffrey
3 Columbus Circle, 15th Fl.
New York, New York 10019

*Attorneys for Defendant Daniel Hernandez*

25

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 11, 2022, the foregoing document is being served on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing:

TACOPINA, SEIGEL & DeOREO
Matthew G. DeOreo, Esq.
275 Madison Ave., Fl. 35
New York, New York 10016
Email: mdeoreo@tacopinalaw.com

*Attorneys for Plaintiff*

Dated:  March 11, 2022

s/ *Robert S. Meloni*
   Robert S. Meloni