UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEKETHA WONZER and KEVIN DOZIER,

                        Plaintiffs,

            -against-                                    20-cv-10836 (JLR) (JW)

DANIEL HERNANDEZ a/k/a TEKASHI 6IX                      **OPINION & ORDER**
9INE,

                        Defendant.

JENNIFER L. ROCHON, United States District Judge:

        Plaintiffs Seketha Wonzer and Kevin Dozier (collectively, "Plaintiffs") bring this action

against Daniel Hernandez, also known as Tekashi 6ix 9ine ("Defendant"), for various claims

related to Defendant's participation in an armed robbery of Plaintiffs. *See generally* ECF No. 1

("Compl."). Before the Court is the Report and Recommendation of Magistrate Judge Jennifer

Willis (the "Magistrate Judge"), dated August 17, 2022, recommending that damages be awarded

to Plaintiffs after Defendant's default. *See* ECF No. 69 ("R&R"). The Magistrate Judge

recommends that the Court award Wonzer $15,000 in compensatory damages, without leave to

amend the judgment for her Medicare lien, and $15,000 in punitive damages. *Id.* at 31. To

Dozier, the Magistrate Judge recommends an award of $30,000 in compensatory damages,

without leave to amend the judgment for his Medicaid lien, $30,000 in punitive damages, and

$7,500 in treble damages. *Id.* at 31-32. Plaintiffs filed objections to the R&R, which Defendant

opposes. *See* ECF No. 72 ("Obj."); ECF No. 75 ("Def. Opp."). For the reasons below, the Court

adopts the R&R in full.

## BACKGROUND

The R&R sets forth in detail the factual background of this case, the medical history of each Plaintiff, and an overview of the evidence presented to the Court.  *See* R&R at 1-3, 8-14, 17-21.  The Court incorporates that portion of the R&R herein and provides a shorter statement of the case below.

On April 3, 2018, Defendant participated in the armed robbery of Plaintiffs; Plaintiffs exited a commercial building in New York City and were ambushed in the building's vestibule.  Compl. ¶¶ 1, 11.  Defendant videotaped the incident from a vehicle outside the building.  *Id.* ¶ 15.  The men stole approximately $1,500 in cash and a gold chain from Dozier.  *Id.* ¶ 19.

Defendant was arrested on November 2018.  *Id.* ¶ 20.  According to the January 23, 2019 fifth superseding information, Defendant was subsequently charged with nine federal charges, including violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  *Id.* ¶¶ 20-21.  Several of the charges related to the robbery of Plaintiffs, including Count 5 (Violent Crime in Aid of Racketeering) and Count Six (Firearms Offense).  *Id.* ¶ 21; Superseding Information, *U. S. v. Hernandez*, 18-cr-00834 (PAE), ECF No. 87 (S.D.N.Y. Feb. 1, 2019).  On January 23, 2019, Defendant pleaded guilty to all of the charges and testified that "[o]n or about April 3, 2018, I and other members robbed a rival of [the] Nine Trye [gang] in Manhattan.  I helped other members of Nine Trey rob persons at gunpoint, and property was taken from the victims."  Compl. ¶ 22.  Plaintiffs contend that they suffer from post-traumatic stress disorder ("PTSD") from the robbery.  ECF No. 50 ¶¶ 28, 41.

Plaintiffs initiated the present action on December 22, 2020.  *See generally* Compl.  Defendant did not answer or otherwise respond to Plaintiffs' complaint.  Plaintiffs filed a motion for default judgment on May 14, 2021.  ECF No. 23.  On June 11, 2021, Defendant's counsel

filed a declaration stating the default was not willful, but Defendant elected not to oppose the motion for default judgment, having allocuted his guilt to various acts in the related criminal case. *See* ECF No. 27 ("Meloni Decl."); *U.S. v. Hernandez*, 18-cr-00834 (PAE), ECF No. 398 (S.D.N.Y. Dec. 20, 2019).

On June 22, 2021, the Court granted Plaintiffs' motion for default judgment on all causes of action. ECF No. 29. The Court referred the case to the Magistrate Judge for an inquest on damages, including the handling of discovery in connection with that inquest. *Id.*; ECF No. 30.[1] On February 10, 2022, Plaintiffs filed a memorandum of law supporting their request for damages (ECF No. 49), Proposed Findings of Fact and Conclusions of Law (ECF No. 50), and a supporting declaration (ECF No. 51). On March 11, 2022, Defendant filed Opposing Findings of Facts and Conclusions of Law (ECF. No. 64) and a declaration with accompanying exhibits (ECF No. 65). On April 21, 2022, Plaintiffs filed a letter with additional evidence in support of their inquest submissions. ECF No. 67. Defendant filed a letter opposing the submission the same day. ECF No. 68.

The Magistrate Judge issued the Report and Recommendation on August 17, 2022. *See generally* R&R. In the R&R, the Magistrate Judge recommended that Wonzer be awarded $15,000 in compensatory damages, without leave to amend for her Medicare lien, and $15,000 in punitive damages. *Id.* at 31. The Magistrate Judge recommended that Dozier be awarded $30,000 in compensatory damages, without leave to amend for his Medicaid lien, $30,000 in punitive damages, and $7,500 in treble damages under RICO. *Id.* at 32. Plaintiffs filed their

---

[1] Magistrate Judge Fox was originally assigned to this case, but the case was transferred to Magistrate Judge Willis on February 1, 2022.

objections to the R&R on September 14, 2022.  Obj.  Defendant filed his opposition to Plaintiffs'
objections on October 11, 2022.  Def. Opp.

## LEGAL STANDARD

In reviewing a magistrate judge's report and recommendation, a district court may
"accept, reject or modify, in whole or in part, the findings or recommendations made by the
magistrate judge."  28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b)(3).  A district court must
"determine *de novo* any part of the magistrate judge's disposition that has been properly objected
to."  Fed. R. Civ. P. 72(b)(3).  "To the extent, however, that the party makes only conclusory or
general objections, or simply reiterates the original arguments, the Court will review the Report
strictly for clear error."  *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y.
2018).  "Objections of this sort are frivolous, general and conclusory and would reduce the
magistrate's work to something akin to a 'meaningless dress rehearsal.' . . . 'The purpose of the
Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing
parties to relitigate every argument which [is] presented to the Magistrate Judge.'"  *N.Y.C. Dist.
Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018)
(quoting *Vega v. Artuz*, 97-cv-03775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30,
2002)).  "In addition, new arguments and factual assertions cannot properly be raised for the first
time in objections to the report and recommendation, and indeed may not be deemed objections
at all."  *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020)
(internal citation and quotation marks omitted); *see United States v. Gladden*, 394 F. Supp. 3d

465, 480 (S.D.N.Y. 2019) (rejecting argument raised for the first time as objection to report and recommendation).

In the context of a damages inquest, a court "accepts as true all of the factual allegations of the Complaint, except those relating to damages." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). "Plaintiffs bear the burden of establishing their entitlement to recovery." *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 627 (S.D.N.Y. 2011). But "the district court cannot simply rely on the plaintiff's statement of damages; there must be a basis upon which the court may establish damages with reasonable certainty." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Plaintiffs are "entitled to all reasonable inferences in [their] favor" based on the evidence that is submitted to the court. *HTV Indus., Inc. v. Agarwal*, 317 F. Supp. 3d 707, 717 (S.D.N.Y. 2018). Even when liability has been established through default, if a plaintiff fails to demonstrate her damages to a reasonable certainty, the court should not award any damages. *See Lenard*, 889 F. Supp. 2d at 527.

A court may, but is not required to, hold a hearing to determine damages. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993). "Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is 'necessary and proper' to hold an inquest on damages." *Id.* (internal citation and quotation marks omitted). The Magistrate Judge here did not hold a hearing, no party objects on that basis, and the Court finds that there was a sufficient basis upon which to evaluate the appropriateness of damages based on the declarations and other evidence submitted by the parties. *See Fustok v. ContiCommodity Servs. Inc.*,

873 F.2d 38, 40 (2d Cir. 1989) (holding that a court "may, but need not" hold a hearing as to damages and "may rely on detailed affidavits or documentary evidence" to establish the appropriate damages to award).

## DISCUSSION

Plaintiffs object to the amount of compensatory damages that the Magistrate Judge recommended: $15,000 and $30,000 to Wonzer and Dozier, respectively.  Plaintiffs further object to the Magistrate Judge's recommendation of punitive damages of $15,000 to Wonzer and $30,000 to Dozier.[2]  For the reasons set forth below, the Court REJECTS Plaintiffs' objections and ADOPTS the R&R in its entirety.

## I.     Compensatory Damages

The Court will first address Plaintiffs' objection to the amount of compensatory damages that the Magistrate Judge recommended: $15,000 and $30,000 to Wonzer and Dozier, respectively.

### A.  Legal Standard

"Under general tort principles, compensatory damages are designed to place the plaintiff in a position substantially equivalent to the one that he would have enjoyed had no tort been committed."  *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 52 (2d Cir. 2015).  "Because the purpose of compensatory damages is to compensate the plaintiff for an injury caused by a defendant, one principle of causation is that the defendant's conduct be a 'but for' cause of plaintiff's injuries."  *Meyers v. Epstein*, 282 F. Supp. 2d 151, 154 (S.D.N.Y. 2003)

---

[2] Plaintiffs do not object to the Magistrate Judge's recommendation (1) to award $7,500 in treble damages to Dozier with respect to his RICO claim (Obj. at 1-2 n.1), and (2) to deny Plaintiffs' request to amend to seek reimbursement regarding their Medicare and Medicaid liens.  Obj. at 4 n.4.  Therefore, those recommendations are adopted without objection.

(internal citation omitted).  Moreover, a plaintiff must show that the damages were proximately caused by the defendant's actions.  *See id.*  These general tort principles of causation align with New York's general damages laws which say that "any damages recovered must be the direct result of defendant's wrongful actions."  *Id.*

In this District, emotional distress damages are often grouped into three categories: "garden-variety," "significant," and "egregious."  *MacMillan v. Millennium Broadway Hotel*, 873 F. Supp. 2d 546, 560 (S.D.N.Y. 2012).  "Garden-variety claims are those in which the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms."  *Villalta v. JS Barkats, P.L.L.C.*, 16-cv-02772 (RA) (RWL), 2021 WL 2458699, at *14 (S.D.N.Y. Apr. 16, 2021), *report and recommendation adopted*, 16-cv-02772 (RA), 2021 WL 2458023 (S.D.N.Y. June 16, 2021) (internal citation and quotation marks omitted).  For garden variety emotional distress damages, courts in this District have awarded damages as low as $5,000 and as high as $125,000.  *See Pelgrift v. 355 W. 41st Tavern, Inc.*, 14-cv-08934 (AJN), 2018 WL 4735705, at *6 (S.D.N.Y. Sept. 30, 2018) (collecting cases).  "Significant" emotional distress involves more substantial harm that is often corroborated by witnesses or medical documents.  *See Vargas v. Premiere Staff Agency*, 17-cv-04280 (VSB) (HBP), 2019 WL 10632865, at *5 (S.D.N.Y. July 18, 2019), *report and recommendation adopted sub nom. Vargas v. Premier Staff Agency*, 17-cv-04280 (VSB) (SLC), 2020 WL 5663412 (S.D.N.Y. Sept. 23, 2020) (internal citation and quotation marks omitted).  Finally, "egregious emotional distress claims generally involve either outrageous or shocking discriminatory conduct or a significant impact on the physical health of the plaintiff."  *Olsen v. Cnty. of Nassau*, 615 F. Supp. 2d 35, 47 (E.D.N.Y. 2009) (internal citation and quotations marks omitted).  Where there are "debilitating and permanent alterations in lifestyle," higher awards

may be warranted.  *Rainone v. Potter*, 388 F. Supp. 2d 120, 124 (E.D.N.Y. 2005) (collecting cases of permanent injuries receiving awards of over $100,000).

B.   *Analysis*

Plaintiffs object to the Magistrate Judge's compensatory damages recommendations and urge the Court to award each Plaintiff $560,000 in compensatory damages for the emotional harm caused by the robbery on April 3, 2018.  Obj. at 1.  Plaintiffs argue that (1) comparable cases support a higher award of compensatory damages for emotional distress (*id.* at 1-4); and (2) the Magistrate Judge should not have recommended lower "garden variety" emotional distress damages given the evidence provided here, including expert medical testimony (*id.* at 4-9).

With respect to Plaintiffs' first argument, Plaintiffs simply cut and paste wholesale the same argument and list of comparable cases from their original brief filed before the Magistrate Judge.  *Compare id.* at 1-4 *with* ECF No. 49 at 1-4.  Plaintiffs have not identified any flaws in the Magistrate Judge's determination that these cases are distinguishable or otherwise presented a specific objection to the reasoning in the R&R.  Thus, a clear error standard applies, and the Court finds no clear error in the Magistrate Judge's reasoned determination that the allegedly comparable cases cited by Plaintiffs are distinguishable from the case at hand.  *See Harris*, 338 F. Supp. 3d at 174 (noting that when arguments are simply reiterated, the court reviews the magistrate judge's decision for clear error); *Gilliam v. Berryhill*, 17-cv-03764 (ER) (BCM), 2019 WL 5188946, at *1 (S.D.N.Y. Oct. 15, 2019) (reviewing report and recommendation for clear error where plaintiff's objection "repeat[ed] the same arguments previously made, nearly verbatim").

Even if reviewed *de novo*, the Court agrees with the Magistrate Judge that the cases cited by Plaintiffs in which courts awarded higher compensatory damages for emotional distress do not require a higher award here.  The circumstances surrounding each of the cited cases are distinguishable from that present here.  Many of the cases Plaintiffs cite involved more egregious incidents and/or conduct that continued over a longer time period than the relatively brief, although certainly distressing, robbery in this case.  *See, e.g.*, *McKithen v. City of New York*, 292 A.D.2d 352, 353 (2d Dep't 2002) (plaintiff was attacked and stabbed in the back by her husband); *Kondracke v. Blue*, 277 A.D.2d 953, 954 (4th Dep't 2000) (petitioners were sexually harassed and discriminated against continually throughout their employment, including via threats of physical harm); *McKay v. Ciani*, 288 A.D.2d 587, 587-88, 589-90 (3d Dep't 2001) (plaintiff was sexually abused during a long term relationship with her substance abuse counselor, including encouragement to have numerous sexual liaisons as part of her therapy); *Roundtree v. City of New York*, 208 A.D.2d 407, 407-08 (1st Dep't 1994) (plaintiff falsely arrested for murder, incarcerated for several days, and endured negative publicity related to arrest).  Without minimizing the incident, for purposes of comparison to the cases cited by Plaintiffs, the robbery here lasted less than one minute (Incident Video),[3] Plaintiffs were not subjected to physical violence, and the evidence regarding the alleged permanence of the emotional distress here is not reliable.  *See infra* at 11-16.

Plaintiffs next argue that the Magistrate Judge should not have recommended garden variety emotional distress damages because the evidence is not limited to Plaintiffs'

---

[3] Defendant supplied the Court with three videos, denoted Exhibits A-1, A-2, and A-3. Exhibit A-1 is a video of the incident from two angles, first from the building camera and then from Defendant's phone.  Exhibit A-2 splices parts of the two videos together chronologically. Exhibit A-3 is a media interview with Plaintiff Wonzer.  The Court here refers to Exhibit A-1 ("Incident Video").

uncorroborated testimony. Obj. at 4.  The Court will address the objections with respect to Wonzer and Dozier in turn.

### 1.   Wonzer Compensatory Damages

While Wonzer presented more than just her own testimony, the Magistrate Judge correctly found that the expert report Wonzer submitted from Dr. Deneen was unreliable because the records upon which it relied contained inaccurate statements by Wonzer that misrepresented the incident, and failed to consider the multiple factors that could have contributed to Wonzer's emotional distress.  *See* R&R at 12-14.

First, the Magistrate Judge found the Deneen report unreliable because it relied on Wonzer's recollection of the robbery which differed significantly from the evidentiary record. *Id.* at 12; *see* ECF No. 52-1 ("Deneen Wonzer Report").  For example, Wonzer reported that she was robbed and sexually assaulted, *see* ECF No. 66-2 ("Dinwiddie Wonzer Report") at 9, and now admits that there was no sexual assault, *see* Obj. at 7.  Also, Wonzer described the robbery as an "ambush" by five gunman in which she could "feel the guns pointed in [her] neck, [her] chest, [her] side."  Deneen Wonzer Report at 2; R&R at 12-13.  The video of the robbery shows that no one pointed a gun at Wonzer, Wonzer was only in the place of the robbery for about 12 seconds, only one person had a gun during the robbery, and that person did not approach Wonzer.  R&R at 13; Incident Video.

Although inferences shall be granted in Plaintiffs' favor when deciding a damages award, the Court cannot ignore inconsistencies in the evidence presented.  A plaintiff must "substantiate its claim with sufficient evidence to prove its damages with reasonable certainty."  *HTV Indus., Inc.*, 317 F. Supp. 3d at 717.  In assessing the evidence, a court may exclude evidence it deems unreliable, which is precisely what was done by the Magistrate Judge here.  *See Gutman v. Klein*,

03-cv-01570 (BMC) (RML), 2010 WL 4916722, at *2 (E.D.N.Y. Nov. 24, 2010), *aff'd*, 515 F. App'x 8 (2d Cir. 2013) (adopting report and recommendation where the magistrate judge found financial documents too unreliable to warrant "much weight"); *Cuffaro v. Fashionisto LLC*, 19-cv-07265 (GBD) (KHP), 2020 WL 5077449, at *4 (S.D.N.Y. July 9, 2020), *report and recommendation adopted*, 19-cv-07265 (GBD) (KHP), 2020 WL 5076826, at *4 (S.D.N.Y. Aug. 27, 2020) (not considering evidence the court deemed "not persuasive" due to factual dissimilarities between the evidence and the case under consideration); *Robinson v. Sanctuary Rec. Grps., Ltd.*, 542 F. Supp. 2d 284, 293 (S.D.N.Y. 2008) ("Plaintiffs' explanation that they did not have sufficient documentation to make accurate accounting does not by some unknown alchemy convert unreliable evidence into reliable evidence."), *vacated on other grounds sub nom. Robinson v. Sanctuary Music*, 383 F. App'x 54 (2d Cir. 2010).  The video evidence undermines the reliability of the expert report and supports a finding of a less egregious incident as the Magistrate Judge found after considering the aforementioned factual discrepancies.

The Magistrate Judge next found that the Deneen report lacked credibility because it did not appropriately evaluate whether alternative causes could have contributed to Wonzer's emotional distress.  Contrary to Wonzer's argument, the Magistrate Judge did not base her ruling on an understanding that Defendant's action had to be the *sole* cause of Plaintiff's injuries.  Obj. at 6-7.  Rather, the Magistrate Judge appropriately found the expert report unreliable for purposes of proving that the robbery caused Wonzer to suffer from potentially permanent PTSD because the report did not evaluate other potential contributing causes to Wonzer's emotional distress.  R&R at 13-14.

To prove tort damages, a party must show that the conduct giving rise to the injuries were the "but for" and "proximate cause" of the damages.  *See Meyers*, 282 F. Supp. 2d at 154.  When

there are multiple potential causes for damages, courts also use the substantial factor test.  *See*

*Atl. Mut. Ins. Co. v. Alitalia-Linee Aeree Italiane-Societa Per Azioni*, 02-cv-05758 (GBD), 2005

WL 427573, at \*3 (S.D.N.Y. Feb. 22, 2005).  Even applying the substantial factor test urged by

Plaintiffs, this test is "virtually identical" to the "but for" test of causation.  *TD Waterhouse Inv.*

*Servs., Inc. v. Integrated Fund Servs., Inc.*, 01-cv-08986 (HB), 2003 WL 42013, at \*9 (S.D.N.Y.

Jan. 6, 2003); *Point Prods. A.G. v. Sony Music Ent., Inc.*, 215 F. Supp. 2d 336, 344 (S.D.N.Y.

2002) ("Under tort law, where there is an issue of multiple potential causes of plaintiff's harm,

the court can use a substantial factor test in place of but for causation in order to determine the

cause in fact of the injury.").  Under the substantial factor test, a defendant's actions "need not be

the sole cause of the injury; it need only have been a substantial factor in bringing the injury

about." *Galioto v. Lakeside Hosp.*, 506 N.Y.S.2d 725, 726 (1986).  That is, a defendant's action

needs not be "the" proximate cause of the injury, but "a" proximate cause.  *Id.*

The Magistrate Judge observed that Wonzer's expert report from Dr. Deneen did not

address the multiple potential causes of Wonzer's emotional distress, including most notably the

murder of Wonzer's husband shortly after the robbery, and therefore did not sufficiently support

a finding that Defendant's actions were a proximate cause of Wonzer's emotional distress.  R&R

at 13-14.  *See, e.g.*, Advisory Committee Note to 2000 Amendments to Fed. R. Evid. 702 (citing

cases that illustrate that "[w]hether the expert has adequately accounted for obvious alternative

explanations" for a plaintiff's condition is a factor in the reliability inquiry).  For example, in

*Tardif v. City of New York*, the court precluded the plaintiff's medical expert from testifying that

the defendant's conduct caused the plaintiff to be traumatized.  344 F. Supp. 3d 579, 601

(S.D.N.Y. 2018).  The court noted that the expert had acknowledged that the plaintiff suffered

from PTSD from an earlier incident and had experienced a great deal of trauma throughout her

life.  *Id.*  The court found the report unreliable because the doctor "conclude[d] that [the plaintiff's] current suffering was caused by [the d]efendants' conduct, without providing any basis for ruling out [the plaintiff's] other traumatic experiences as the source of her injuries."  *Id.* As the *Tardif* court held, "[w]hile an expert need not rule out every potential cause in order to satisfy *Daubert*, the expert's testimony must at least address obvious alternative causes and provide a reasonable explanation for dismissing specific alternate factors identified by the defendant."  *Id.* (quoting *Matthews v. Hewlett-Packard Co.*, 15-cv-03922 (DAB), 2017 WL 6804075, at *5 (S.D.N.Y. Dec. 22, 2017)).

So too here, the Magistrate Judge concluded that Dr. Deneen's 2022 report was unreliable in establishing causation (even under a substantial factor test) because it summarily decided that Wonzer's PTSD "has a causal relationship" to the robbery in April 2018, without addressing the impact of other potential contributing factors such as her husband being shot and killed less than eight months later in November 2018.  R&R at 13-14; *see, e.g.*, *Rhone v. United States*, 04-cv-05037 (PKL), 2007 WL 3340836, at *6-10 (S.D.N.Y. Nov. 9, 2007) (finding lack of proximate cause where the plaintiff's expert did not consider other conditions that could have caused the injury).  This Court agrees based on its review of the record as well.

Contrary to Wonzer's objection, the Magistrate Judge did not hold that if there were multiple causes of an injury, only garden variety damages can be awarded.  Obj. at 6.  Rather, the Magistrate Judge correctly found Dr. Deneen's report to be unreliable because it did not address the potential alternative causes of Wonzer's emotional distress, including the significant traumatic event of the murder of her husband, rendering causation difficult to ascertain.  R&R at 13-14.  Without reliable corroboration, the Magistrate Judge recommended less significant

damages than requested by Wonzer.[4]  *Id.*  Further, the Court agrees with the Magistrate Judge

that Dr. Deneen does not provide a basis for the summary conclusion that Plaintiff's injuries

were "permanent." *Id.* at 14-15.

Based on the foregoing, this Court agrees with the Magistrate Judge's assessment that

there is an insufficient basis from which to find that the robbery caused Wonzer's claimed

emotional distress to the magnitude that Wonzer is claiming. Therefore, without sufficiently

reliable corroborating evidence, Wonzer has not proven her requested damages with reasonable

certainty.  Given the duration and circumstances of the incident, an award akin to more garden

variety damages ($15,000) is appropriate.  *Cf. Fontana v. Bowls & Salads Mexican Grill, Inc.*,

19-cv-01587 (ARL), 2022 WL 3362181, at *6 (E.D.N.Y. Feb. 3, 2022), *report and*

*recommendation adopted,* 2022 WL 2389298 (E.D.N.Y. July 1, 2022) (awarding garden variety

emotional distress damages of $15,000 even where the expert report detailed the plaintiff's

depression and anxiety).

2.   Dozier Compensatory Damages

Plaintiffs likewise object to the Magistrate Judge's recommendation of compensatory

damages of $30,000 to Dozier because the expert report from Dr. Deneen, citing to and relying

---

[4] The cases cited by Plaintiffs do not counsel a different conclusion.  For example, in *McGrory v. City of New York*, 99-cv-04062 (FM), 2004 WL 2290898 (S.D.N.Y. Oct. 8, 2004), the court reduced the plaintiff's compensatory emotional damages to a fifth of what was awarded by the jury because while the plaintiff had established that he had suffered significant damages from retaliatory discharge, the defendant was "only liable for any exacerbation of his preexisting conditions caused by his termination."  *Id.* at *15-16.  Likewise here, Wonzer is only entitled to emotional distress damages caused by the robbery.  Without reliable testimony regarding the cause of Wonzer's emotional distress, given Dr. Deneen's failure to address the impact of potentially significant contributors to her emotional distress that were not related to the robbery, reduced damages are appropriate.

on Dozier's medical records, corroborates Dozier's severe emotional distress, and warrants significant damages.  Obj. at 8-9.

The Magistrate Judge found the Deneen expert report submitted for Dozier unreliable for multiple reasons.  First, Dr. Deneen administered psychiatric evaluations to Dozier that show a significant increase in symptoms such as intrusive experiences, suicidal ideation, anxious arousal, and depression.  R&R at 20; ECF No. 52-2 ("Deneen Dozier Report") at 4-5.  These results are in contrast, however, with the statements that Dozier made to his treating doctor that his symptoms were much better a few months prior to the evaluations but well after the incident.  R&R.at 20; ECF No. 66-1 ("Dinwiddie Dozier Report") at 11-12.  Plaintiffs do not address this inconsistency.  Obj. at 8-9.  The Court agrees that this discrepancy reduces the reliability of the expert report.

The Magistrate Judge also found the expert report unreliable to the extent it was based on Dozier's testimony, which was inconsistent with the video of the robbery.  R&R at 20.  Dozier told Dr. Deneen that the robbery lasted "two to three minutes" and the men put "a gun to [his stomach]" and "had guns and machetes."  *Id.* at 20; *see* Deneen Dozier Report at 1; Dinwiddie Dozier Report at 12.  This testimony is inconsistent with the video evidence of the robber, which is shorter in duration and does not show any machetes.  *See* Incident Video.  The Court agrees with the Magistrate Judge that Dozier's inaccurate account of the robbery, relied upon by Deneen, contributes to the unreliability of the expert report.

Finally, Plaintiffs argue that higher damages are warranted because the robbery exacerbated Dozier's prior existing depression and caused PTSD.  Obj. at 9.  However, as the Magistrate Judge found, "while Dr. Deneen acknowledges Dozier's pre-existing depression . . . he does not explain how the robbery exacerbated this condition."  R&R at 20-21.  Without

reliable objective evidence as to how, and to what magnitude, Dozier's prior existing conditions were exacerbated, Dozier has failed to show damages with reasonable certainty.  *See Steadman v. Gov't Emp. Ins. Co.*, 20-cv-01005 (CM), 2020 WL 7060015 (CM), at *7 (S.D.N.Y. Dec. 2, 2020) (stating that the plaintiff must "provide objective evidence that distinguishes aggravation of a pre-existing condition from the pre-existing condition itself" in order to obtain damages for the aggravation of a pre-existing condition); *Evans v. United States*, 978 F. Supp. 2d 148, 172 (E.D.N.Y. 2013) (same).  Given the other medical and lifestyle information provided, the Magistrate Judge likewise took issue with the conclusory statement by Deneen that Dozier's PTSD and related psychological conditions "could be permanent."  R&R at 22-23.  This Court agrees with the Magistrate Judge's analysis and that $30,000 is an appropriate award – instead of the more than half a million dollars requested by Dozier – in light of the circumstances of the incident and questions surrounding causation given Dozier's pre-existing conditions.  *Cf. Fowler v. New York Transit Authority*, 96-cv-06796 (JGK), 2001 WL 83228, at *14-15 (S.D.N.Y. 2001) (taking into account evidence of other factors like preexisting head injuries that could have caused the plaintiff's headaches and emotional distress in reducing jury award of damages for emotional distress from $50,000 to $25,000).[5]

## II.   Punitive Damages

Plaintiffs next object to the Magistrate Judge's recommendation of a punitive damages award of $15,000 to Wonzer and $30,000 to Dozier.  Obj. at 24-30.  The first six pages of

---

[5] Even if the Court were to consider Deneen's reports, it would still not award significant, rather than garden variety, emotional distress damages to either Plaintiff because of the short duration of the incident, the lack of physical violence, the impact of preexisting conditions or other causes of emotional distress, and comparable decisions awarding significantly less than the amounts sought by Plaintiffs.  *See Pelgrift*, 2018 WL 4735705, at *6 (declining to disturb the magistrate judge's finding of garden variety emotional distress in awarding $20,000 and $40,000, even taking into account psychological evaluations that the magistrate judge deemed inadmissible).

Plaintiffs' objection to the punitive damages recommendation cites a string of allegedly comparable cases in support of their requested ratio of 9.52:1 for punitive damages, but simply repeats the same arguments (virtually verbatim) that were contained in their original damages briefing to the Magistrate Judge, without highlighting a particular objection to the Magistrate Judge's analysis.  *Compare id.* at 10-15 *with* ECF No. 49 at 6-11.  Thus, a clear error standard should apply and the Court finds no clear error in the Magistrate Judge's determination that the punitive damages ratio suggested by Plaintiffs was not appropriate given the facts and circumstances of this case.  R&R at 30; *see Gilliam*, 2019 WL 5188946, at *1 (applying clear error standard to objections that are repeated verbatim from underlying briefs to the magistrate judge).

Even examining the Magistrate Judge's entire assessment of punitive damages *de novo* in light of all arguments raised by Plaintiffs, the Court finds that the recommended punitive damages of $15,000 and $30,000 are appropriate.  Punitive damages "serve a broader function" than compensatory damages and "are aimed at deterrence and retribution."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).  "Awards of punitive damages are by nature speculative, arbitrary approximations."  *Payne v. Jones*, 711 F.3d 85, 93 (2d Cir. 2013).  The Magistrate Judge evaluated three guideposts in awarding punitive damages: "(1) the degree of reprehensibility of the defendant's conduct; (2) the difference between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and the civil penalties imposed in comparable cases."  R&R at 24 (citing *BMW of N. Am. Inc. v. Gore*, 517 U.S. 559, 575 (1996)) (the "*Gore*" factors).  "In addition, no matter how egregious the underlying conduct, the court is required to consider the

defendant's financial circumstances in determining an award of punitive damages." *Antoine v. Brooklyn Maids 26*, Inc., 489 F. Supp. 3d 68, 101 (E.D.N.Y. 2020).

Plaintiffs do not object to the applicability of the *Gore* factors, but instead dispute the Magistrate Judge's analysis of the first *Gore* factor: the reprehensibility of the Defendant's actions.  Obj. at 15-17.  To determine reprehensibility a court considers whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 419.  In evaluating reprehensibility, the Magistrate Judge found that the incident caused mental distress to Plaintiffs and additional economic harm to Dozier; the conduct evinced an indifference or reckless disregard for Plaintiffs' health and safety; and the conduct was not an accident.  R&R at 25.  However, the Magistrate Judge discounted Plaintiffs' statement that "Defendant caused Plaintiffs to be violently robbed at gunpoint by dangerous gang members" because Defendant was not physically involved in the robbery and instead was outside in a car videotaping the incident.  *Id.* at 25.  Plaintiffs object to this analysis because Defendant pleaded guilty "to robbing Plaintiffs at gun-point with his fellow gang members."  Obj. at 15.  Even though Defendant did not brandish a gun, Plaintiffs argue that the fact that he participated in a conspiracy makes him equally culpable for the actions of his co-conspirators.  *Id.* at 15-16.

Plaintiffs' argument is not persuasive.  The cases cited by Plaintiffs (*see id.* at 16) are criminal cases that speak to conspiracy liability in a criminal context.  *See United States v. Pers.*, 745 F. App'x 380, 384-85 (2d Cir. 2018) (affirming a criminal jury instruction stating that an individual was guilty of conspiracy even if participation was less than other co-conspirators);

*United States v. Sezanayev*, 17-cr-00262 (LGS), 2018 WL 2324077, at *6 (S.D.N.Y. May 22, 2018) ("Conspiracy liability does not depend on who was the 'head' and who was a willing subordinate – all co-conspirators are equally culpable.").   Although Plaintiffs are correct that criminal liability of conspiracy members is imputed to all co-conspirators, Plaintiffs point to no case law supporting the same analysis in the context of assessing reprehensibility for purposes of awarding punitive damages.   Indeed, in evaluating appropriate punitive damages, courts have distinguished between the conduct of separate wrongdoers involved with an incident or claim, even where, as in a conspiracy context, liability is legally imputed to others.   For example, in *Angulo v. 36th St. Hosp. LLC*, 19-cv-05075 (GBD) (SLC), 2020 WL 4938188, at *1 (S.D.N.Y. July 31, 2020), *report and recommendation adopted*, 19-cv-05075 (GBD) (SLC), 2020 WL 4936961 (S.D.N.Y. Aug. 24, 2020), the plaintiff sought damages against her former employers for sexual harassment and discrimination, based primarily on the behavior of her employers' owner who sexually harassed and raped her.  *Id.* at *1.   In assessing punitive damages against the former employers, to whom the owner's behavior was imputed, *id.* at *8, the court reduced the requested punitive damages in part because the non-party owner who actually committed the sexual assault was not before the court.  *Id.* at *14;[6] *see also Munson v. Diamond*, 15-cv-00425 (DAB) (BVM), 2017 WL 4863096, at *9 (S.D.N.Y. June 1, 2017) (awarding $30,000 in punitive damages against former employer instead of $450,000 requested, in part because supervisor who

---

[6] Despite criticizing the Magistrate Judge's reliance on *Angulo*, Plaintiffs nonetheless ask the Court to consider that the *Angulo* court awarded $100,000 in punitive damages "for nonviolent offensive conduct" which is "far more than" the punitive damages recommended here in connection with a violent crime of armed robbery by gang members. Obj. at 16.  Plaintiffs completely mischaracterize *Angulo* as the plaintiff there was subject to ongoing sexual harassment for over a year, pushed to the floor, groped, and forcibly raped.  *Angulo*, 2020 WL 4938188, at *2-3. Without detracting from the significance of the incident here, it differs from the circumstances in *Angulo* in both duration and violent physical nature, especially since Defendant remained in the car during the robbery.

sexually harassed the plaintiff was not before the court).   In sum, the reprehensibility analysis must focus on Defendant's conduct and here Defendant conspired to commit an armed robbery, which the Magistrate Judge took into account, but did not physically participate and instead sat outside in a car.  Compl. ¶ 15.

Plaintiffs' reliance on cases such as *Jennings v. Yurkiw*, 18 F.4th 383 (2d Cir. 2021) to argue that the short duration of the robbery here should not reduce the punitive damages award is misplaced.  Obj. at 17.  In *Jennings*, the court upheld a significant punitive damages award in part due to the heightened reprehensibility of the conduct, where several police officers falsely arrested the plaintiff and beat him causing "a right eye hematoma, several fractures in both nasal walls, a deviated nasal septum, and an inflamed ethmoid sinus" later taking active steps to cover up these actions.  *Jennings*, 18 F.4th at 387-88, 390-91.  This violent, albeit relatively brief, encounter and abuse of police power is distinguishable from the case at hand.  Other cases cited by Plaintiffs are also distinguishable because they involved conduct of a longer duration.  *See, e.g.*, *Bell v. Helmsley*, No. 111085/01, 2003 WL 1453108, at *1, *6 (N.Y. Sup. Ct. Mar. 4, 2003) (employee endured a hostile and/or abusive worked environment for two months and was then fired for being gay); *Rosenberg, Minc & Armstrong v. Mallilo & Grossman*, 798 N.Y.S.2d 322, 330-31 (Sup. Ct. 2005) (conduct extended over a period of months and "involved more than fifty attempts to access . . . confidential messages").

Plaintiffs next claim the Magistrate Judge failed to consider Defendant's lack of remorse in evaluating reprehensibility.  Obj. at 17-18.  To the contrary, the Magistrate Judge considered Plaintiffs' late submitted evidence and arguments which, in summary, urged the Magistrate Judge to consider the lack of remorse Defendant allegedly showed through his rap lyrics.  R&R at 26; *see* ECF No. 67.  The Magistrate Judge considered Defendant's rap lyrics and thoughtfully

contextualized those lyrics within rap culture: a community in which individuals gain cache from bragging about their unlawful actions.  R&R at 26.  Affording some, but only "minimal weight," to the lack of remorse in this case was appropriate.  *See id.*[7]

Plaintiffs next object to the Magistrate Judge's finding that Defendant does not have the means to pay a significant punitive damages award.  Obj. at 18.  Plaintiffs argue that the Court should rely on Defendant's tax returns and disregard the affidavit of Defendant's business manager and financial accountant.  *Id.* at 18.  The Court does not agree.  Mr. Kobay, a Certified Public Accountant and Defendant's business manager and accountant, provided a sworn affidavit that attests that although Defendant made "significant income in 2018-2020" as shown on his tax returns, Defendant's current net worth "is technically less than zero" given that "Defendant's current liabilities, including past due taxes, are greater than his assets."  ECF No. 65-3 ("Kobay Decl.") ¶¶ 8, 13.   A party may use an affidavit to support a statement of their net worth.  *See Sabatelli v. Allied Interstate, Inc.*, 05-cv-03205 (ADS) (ARL), 2006 WL 2620385, at *1 (E.D.N.Y. Sept. 13, 2006) ("[D]efendants can swear to an affidavit declaring their respective net worth.").  The Magistrate Judge found the affidavit to be credible, and Defendant's tax returns, cited by Plaintiffs, that do not reflect liabilities, do not provide contrary evidence.  Therefore, the Court agrees that Defendant is of somewhat limited means with regard to his ability to pay a significant punitive damages award.

---

[7] In their Objection, Plaintiffs raise a new argument that reprehensibility should weigh heavily in favor of Plaintiffs because Defendant should have known his conduct was illegal.  Obj. at 17.  This argument was not raised below and therefore is rejected as an improper objection.  *See Gladden*, 394 F. Supp. 3d at 480 ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal citations omitted).  Even if considered, the Magistrate Judge properly evaluated Defendant's involvement and state of mind in evaluating reprehensibility, including examining his guilty plea allocution.  *See* R&R at 25, 27.

Finally, Plaintiffs argue that the Magistrate Judge erred because she "awarded a low dollar figure for punitive damages because she viewed her award of compensatory damages as substantial" when it was "merely garden variety," thereby skewing her evaluation of an appropriate punitive damages ratio.  Obj. at 18-19 (citing to *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 410 (2003) ("When compensatory damages are substantial, then an even lesser ratio can reach the outermost limit of the due process guarantee.")).  The Court disagrees.  The Magistrate Judge's punitive damages recommendation was not based on an erroneous understanding that the compensatory damages award for emotional distress fell into the category of "substantial" or "significant" rather than "garden variety."  Rather, the Magistrate Judge appropriately concluded that a 1:1 ratio of compensatory to punitive damages, instead of the almost 10:1 ratio requested by Plaintiffs, provided a more reasonable award of punitive damages under the circumstances of this case.  R&R at 27; *see Payne*, 711 F.3d at 102 (noting that courts consider "the ratio of the punitive damages award to the compensatory award, and consider whether that ratio is reasonable in the circumstances of the case").  The Court agrees that based on all of the circumstances of this case, including the short duration of the incident, the fact that Defendant was not physically involved in the incident, Defendant's net worth, and the amount of punitive damages that would result from a higher ratio, the 1:1 ratio here was appropriate.

## CONCLUSION

Accordingly, the Court rejects Plaintiffs' objections and adopts the R&R in its entirety. The Clerk of Court is respectfully directed to enter judgment against Defendant in the amount of

$30,000 to Seketha Wonzer and $67,500 to Kevin Dozier.  The Clerk of Court is also

respectfully directed to close the case.

Dated:  July 28, 2023
      New York, New York

                       SO ORDERED.

                       *Jennifer Rochon*

                       JENNIFER L. ROCHON
                       United States District Judge